**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Lirit A. King, Esq.  (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:  (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
          kgrombacher@bradleygrombacher.com
          lking@bradleygrombacher.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

REBECKA MILLER, an individual, and on behalf of classes of similarly situated individuals,

　　　　　　Plaintiff,

v.

PLEX, INC., a Delaware corporation; and PLEX GMBH, a Swiss corporation

　　　　　　Defendants.

CASE NO:

**CLASS ACTION** COMPLAINT FOR:

1.  **NEGLIGENCE;**

2.   **DECLARATORY JUDGMENT;**

3.  **VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT § 1798.150; AND**

4.  **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, ET SEQ.**

　　**DEMAND FOR A JURY TRIAL**

1

Plaintiff Rebecka Miller, individually and on behalf of classes of similarly situated individuals (defined below), brings this action against Defendants Plex, Inc. and Plex GmbH ("Plex" or "Defendants"). Plaintiff and her counsel believe that reasonable discovery will provide additional evidentiary support for the allegations herein.

## INTRODUCTION

1.      Plex is an online entertainment platform that combines streaming services from media publishing partners and user's personal media library, which can all be consumed through Plex's website or through various devices by downloading the Plex App.[1]

2.      To engage Defendant's online services, customers create and populate user profiles with personally identifiable information ("PII") such as first and last name, email address, password, and payment card information. Plex customers trust that their PII will be maintained in a secure manner and kept from unauthorized disclosure to third parties as outlined in Plex's Privacy Policy.[2]

3.      On or about August 23, 2022, Plex sent an email to its users notifying them that it had "discovered suspicious activity on one of [their] databases."[3]

4.      To date, Plex has acknowledged that the customer information disclosed in the Data Breach included a combination of the following PII:

- email address;
- usernames; and
- password information.

5.      The Plex customer PII disclosed in the Data Breach is protected by the California Consumer Privacy Act of 2018 ("CCPA"), which went into effect on January 1, 2020. For purposes of the CCPA, "personal information" is defined as an individual's first name or first initial and his or her last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted: (1) social security number; (2) driver's

---

[1] https://www.plex.tv/about/ (last viewed Aug. 30, 2022)

[2] https://www.plex.tv/about/privacy-legal (last viewed Aug. 30, 2022)

[3] Jess Weatherbed, *Plex Breach Exposes Usernames, Emails, And Encrypted Passwords*, THE VERGE, Aug. 24, 2022, https://www.theverge.com/2022/8/24/23319570/plex-security-breach-exposes-usernames-emails-passwords

license number or California ID card number; (3) account number or credit or debit card number, in combination with any required security code, access code or password that would permit access to an individual's financial account; (4) medical information; and/or (5) health insurance information.[4]

6.      Alternatively, protected PII includes "A username or email address in combination with a password or security question and answer that would permit access to an online account."

7.      When nonencrypted and nonredacted personal information protected by Section 1798.150 is subjected to unauthorized access and exfiltration, theft, or disclosure by a company that has failed to maintain reasonable security measures, the CCPA explicitly authorizes private litigants to bring individual or class action claims.[5]

8.      According to Plex's notice to affected customers, the PII subjected to unauthorized access and exfiltration, theft or disclosure in the Data Breach includes (among other things): (i) customers' unencrypted and unredacted name, and (ii) an email address that serves as an account login/account number, and (iii) password (although not confirmed at the time of the notice). In combination, those pieces of PII could permit access to other accounts using similar passwords, including financial accounts.

9.      Plex has failed to maintain reasonable security controls and systems appropriate for the nature of the PII it maintains as required by the CCPA and other common and statutory laws.

10.     Because (i) Plex has failed to maintain reasonable security measures, and (ii) while Plex claims that the passwords were encrypted, the usernames that Plex disclosed in combination with emails were unredacted and unencrypted, the CCPA explicitly permits an individual or class action under Section 1798.150 for this Data Breach.

11.     Plex claims its "doing additional reviews to ensure that the security of all of our systems is further hardened to prevent future incursions" but the viewing, theft, and attempted sale

---

[4] In other sections of the CCPA, "personal information" is defined more broadly as "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household." See e.g. Cal.Civ.Code § 1798.150.

[5] CCPA Section 1798.192 also states: "Any provision of a contract or agreement of any kind that purports to waive or limit in any way a consumer's rights under this title, including, but not limited to, any right to a remedy or means of enforcement, shall be deemed contrary to public policy and shall be void and unenforceable."

of California consumers' PII on the dark web has likely already occurred and cannot be cured and victims, like Plaintiff, are already experiencing the consequences of the Data Breach.

12.     Defendants disregarded Plaintiff's and Class members' privacy rights in the PII by, among other things, (i) failing to implement reasonable security safeguards to prevent or timely detect the Data Breach; (ii) failing to disclose to customers that it did not implement such reasonable security safeguards; and (iii) failing to provide sufficiently prompt, thorough, and accurate notice and information concerning the Data Breach.

13.     As a result of the Data Breach, Plaintiff and the Classes have been injured in several ways. Plaintiff and Class members (i) now know or should know that their PII was hacked and put up for sale on the dark web for purchase by malicious actors; (ii) face an imminent and ongoing risk of identity theft and similar cybercrimes; (iii) have expended and will continue to expend time and money to protect against cybercrimes; (iv) have lost value in their PII; and (v) did not receive the benefit of their bargain with Defendants regarding data privacy.

14.     Plaintiff and Class members are therefore (i) entitled to actual damages under the CCPA and other laws, (ii) have incurred actual and concrete damages as a result of the unauthorized sale of their PII to malicious actors on the dark web, and (iii) face ongoing risks of disclosure of their PII in subsequent data breaches because Defendants have not demonstrated that they have implemented reasonable security systems and procedures. Plaintiff and Class members have a significant interest in the protection and safe storage of their PII. They are therefore entitled to declaratory, injunctive, and other equitable relief necessary to protect their PII. This includes, but is not limited to, an order compelling Defendants to adopt reasonable security procedures and practices to safeguard customers' PII and prevent future data breaches.

**JURISDICTION AND VENUE**

15.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and one or more members of the Classes are residents of a different state than Defendants. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.     This Court has personal jurisdiction over Defendants because they have continuous and systematic contacts with and conduct substantial business in the State of California and this District. Defendant Plex, Inc. maintains its principal place of business in this District and has continuous and systematic contacts with and conducts substantial business in the State of California and this District. In addition, the events and omissions complained of by Plaintiff's arise out of Defendants' connection with this District.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). A substantial part of the events giving rise to these claims took place in this District, numerous Class members reside in this District and were therefore harmed in this District.

## INTRADISTRICT ASSIGNMENT

18.     This action is properly assigned to the San Jose Division of this District pursuant to N.D. Cal. L.R. 3-2 because a substantial part of the events or omissions giving rise to Plaintiff' claims arose in the counties served by the San Jose Division. Plex, Inc. is headquartered in this Division and conducts substantial business in the counties served by this Division, has marketed, advertised, sold, and collected contact information from consumers in this District, and has caused harm to Class members residing in those counties.

## PARTIES

19.     Plaintiff Rebecka Miller ("Plaintiff Miller") is a permanent resident of Upland, California. Plaintiff Miller created a user profile on Plex's website. Plaintiff Miller entrusted Plex with their PII. On or about August 25, 2022, Plaintiff Miller received an email from Plex notifying her that her PII had been accessed by malicious third parties without authorization. Because of the Data Breach, she has continuously monitored her various accounts to detect misuse of her PII and will continue to expend time to protect against fraudulent use or sale of her PII.

20.     As a result of the notice, Plaintiff Miller spent time dealing with the consequences of the data breach, which includes time spent reviewing the account compromised by the breach, contacting her credit card company, exploring credit monitoring options, and self-monitoring her accounts.

///

21.     Knowing that the hacker stole her PII, and that her PII may be available for sale on the dark web, has caused Plaintiff Miller anxiety. Plaintiff Miller is now greatly concerned about credit card theft and identity theft in general. This breach has given Plaintiff Miller hesitation about utilizing online websites.

22.     The aftermath of the Data Breach has been exasperated by the fact that Plaintiff has been notified of multiple attempts to login to her other online accounts that are registered under the same email address as the one she used when she created her Plex account.

23.     Defendant Plex, Inc. is a for-profit Delaware corporation and maintains a headquarters and principal place of business in Los Gatos, California. Plex is a "global streaming media platform" with approximately 20 million users.[6]

24.     Defendant Plex GmbH is a for profit corporation with its principal office located at Hansmatt 32, 6370 Stans, Nidwalden, Switzerland. Upon information and belief, Plex GmbH also has an office located in Los Gatos and/or it operates in part out of Plex's San Francisco office.

## FACTUAL BACKGROUND

**Defendants' Relevant Privacy Policies**

25.     Personal data must be provided in order for consumers to use the service provided by Plex.

26.     Plex's Privacy Policy is available on its website and provides customers with terms and conditions regarding the treatment of their PII. For example, it states, in relevant parts:

> We may also collect automatically-generated and technical information. Therefore, the information we have ("Collected Information") may include:
>
> a. Profile Information. You may provide us with profile information such as your e-mail address, username, a profile image, and password when you create an account … You may also provide us with your payment information when you sign-up for a paid service; and
>
> b. Information from External Services. If you choose to connect your

---

[6] https://www.plex.tv/press/product-facts/ (last viewed Aug. 30, 2022)

account to an account of an external service, such as a social networking site, we may collect certain information from those accounts, such as your name and email address as well as data required to connect to that service.[7]

27.    Additionally, Plex collects information about[8]:

- Metadata for Personal Content
- Metadata for Personal Content for Integration with Third-Party Control and Playback Mechanism;
- Usage Statistics for Personal Content;
- Data Related to Third-Party Content;
- Information about integrated Third-Party Services;
- Information on our Services;
- Information about Interfacing Software;
- Debugging and Other Information Voluntarily Provided;
- Application Information;
- Plex Relay Service; and
- Cookies and Other Tracking Technology.

28.    Plex's Privacy Policy assures Plex customers their PII is secure. For example, Plex states it "care[s] deeply about your privacy" and "strive[s] to ensure that your personal information always stays safe"[9]

**Plex Uses PII to Maximize Its Profits and For Marketing and Promotion**

29.    Plex's Privacy Policy reveals the significant benefit Plex derives from collecting and maintaining its customers PII. In addition to the uses listed above, Plex:

- [M]ay use your email address or other registration data to provide you with technical support, send you communications about the Service or other promotional offers you have elected to receive, and to serve you with marketing

---

[7] https://www.plex.tv/about/privacy-legal/ (las viewed Aug. 30, 2022)

[8] *Ibid.*

[9] *Ibid.*

offers that are more relevant to your interests.[10]

**Plex Failed to Take Reasonable Steps to Protect User Data**

30.     By collecting, using, and deriving significant benefit from customers' PII, Plex had a legal duty to take reasonable steps to protect this information from disclosure.

31.     As discussed below, Defendants also had a legal duty to take reasonable steps to protect customers' PII under applicable federal and state statutes, including Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, and the California Consumer Protection Act of 2018 (the "CCPA"), Cal. Civ. Code § 1798, *et seq*. This duty is further defined by federal and state guidelines and industry norms.

32.     Defendants breached their duties by failing to implement reasonable safeguards to ensure Plaintiff and Class members' PII was adequately protected. As a direct and proximate result of this breach of duty, the Data Breach occurred, and Plaintiff and Class members were harmed. Plaintiff and Class members did not consent to having their PII disclosed to any third-party, much less a malicious hacker.

33.     The Data Breach was a reasonably foreseeable consequence of Defendants' inadequate security systems.  Defendant Plex has the resources to implement reasonable security systems to prevent or limit damage from data breaches. Even so, it failed to properly invest in its data security. If Plex had implemented reasonable data security systems and procedures (i.e., followed guidelines from industry experts and state and federal governments), then it likely could have prevented hackers from infiltrating its systems and accessing its customers' PII.

**Plex's Failed to Take Reasonable Steps to Protect User Data Resulted in a Massive Data Breach**

34.     A data breach is any incident where confidential or sensitive information has been accessed without permission. Breaches are the result of a cyberattack where criminals gain unauthorized access to a computer system or network and steal the private, sensitive, or confidential personal and financial data of the customers or users contained within.

///

---

[10] https://www.plex.tv/about/privacy-legal/tracking-technologies/ (last viewed Aug. 30, 2022)

35.     Despite these assurances and the significant benefit Plex receives by collecting and maintaining its customers' PII, Plex did not adopt reasonable data measures and systems to protect customers' PII or prevent and detect unauthorized access to this data. Plex maintains a business that operates exclusively online and collects millions of dollars from online customers each year; it has the resources to adopt reasonable protections and should have known to do so. It knew or should have known that its systems had inadequate protections that placed its customers at significant risk of having their PII stolen by hackers.

36.     Such failures resulted in Data Breach on August 24, 2022 which resulted in the theft of approximately 20 million account credentials.[11]

**Annual Monetary Losses from Identity Theft are in the Billions of Dollars Value of Personally Identifiable Information**

37.     Plex's failure to implement reasonable security systems has caused Plaintiff and Class members to suffer and continue to suffer harm that adversely impact Plaintiff and Class members economically, emotionally, and/or socially. As discussed above, Plaintiff and Class members now face an imminent and ongoing threat of identity theft and resulting harm. These individuals now must spend significant time and money to continuously monitor their accounts and credit scores to limit potential adverse effects of the Data Breach regardless of whether any Class member ultimately falls victim to identity theft.

38.     The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Experion has created the below chart tracking the sale process

---

[11]Jess Weatherbed, *Plex Breach Exposes Usernames, Emails, And Encrypted Passwords*, THE VERGE, Aug. 24, 2022, https://www.theverge.com/2022/8/24/23319570/plex-security-breach-exposes-usernames-emails-passwords

of the most common pieces of hacked information[12]:



39.     Such figures are consistent with those reported by other media outlets.

40.     The information stolen from Plex included usernames and passwords—PII that is highly valued among cyber thieves and criminals on the Dark Web. For example, Apple ID usernames and passwords were sold on average for $15.39 each on the Dark Web, making them the most valuable non-financial credentials for sale on that marketplace. Usernames and passwords for eBay ($12), Amazon (≤$10), and Walmart (≤$10) fetch similar amounts[13].

41.     This is particularly problematic because password reuse and modification is a very common behavior (observed on 52% of users in one study and far more in more current polls.[14]) By unlawfully obtaining this information, cyber criminals can use these credentials to access other services beyond that which was hacked.

---

[12] https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last viewed Aug. 30, 2022)

[13] Don Reisinger, *Here's How Much Your Stolen Apple ID Login Costs on the Dark Web,* FORTUNE (Mar. 7, 2018), https://fortune.com/2018/03/07/apple-id-dark-web-cost/. *See also* https://www.npr.org/2018/02/22/588069886/take-a-peek-inside-the-market-for-stolen-usernames-and-passwords

[14] Chun Wang et al., The Next Domino to Fall: Empirical Analysis of User Passwords across Online Services, In Proceedings of The ACM Conference on Data and Applications Security and Privacy (CODASPY). Tempe, AZ, March 2018.

42.    There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm[15].

43.    As a result of the data breach, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class Members are also subject to a higher risk of phishing and pharming where hackers exploit information they already obtained in an effort to procure even more PII. Plaintiff and Class Members are presently incurring and will continue to incur such damages, in addition to any fraudulent credit and debit card charges incurred by them, and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies. In addition, Plaintiff and Class Members now run the risk of unauthorized individuals creating credit cards in their names, taking out loans in their names, and engaging in other fraudulent conduct using their identities.

44.    Despite this harm, Plex has failed to recognize the impact of the Data Breach on its customers; it has not even offered impacted customers credit monitoring services or other mitigation measures beyond what is available to the public. For example, Plex's notice to affected customers puts the onerous on the user to change his or her password.

45.    Due to Defendants' conduct, Plaintiff and Class members are entitled to credit monitoring. Credit monitoring is reasonable here. The PII taken can be used towards identity theft and other types of financial fraud against the Class members. There is no question that this PII was taken by sophisticated cybercriminals, increasing the risks to the Class members. The consequences of identity theft are serious and long-lasting. There is a benefit to early detection and monitoring.

---

[15] GAO, Report to Congressional Requesters, at 33 (June 2007), available at http://www.gao.gov/new.items/d07737.pdf.

46.     Annual subscriptions for credit monitoring plans range from approximately $219 to $329 per year.

47.     Plaintiff and Class members therefore have a significant and cognizable interest in obtaining equitable relief (in addition to any monetary damages) that protects them from these long-term threats.

## **CLASS ACTION ALLEGATIONS**

48.     Plaintiff bring this nationwide class action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all members of the following classes:

**Nationwide Class:**

All individuals whose PII was compromised in the data breach announced by Plex on August 25, 2022.

**California Class**:

All individuals whose PII was compromised in the data breach announced by Plex on August 25, 2022, who reside in the State of California.

49.     Specifically excluded from this Class are Defendants; the officers, directors, or employees of Defendants; any entity in which Defendants have a controlling interest; and any affiliate, legal representative, heir, or assign of Defendants. Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

50.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

51.     **Numerosity:** The Classes are sufficiently numerous, as each includes hundreds of thousands of individuals. Thus, joinder of such persons in a single action or bringing all members of the Classes before the Court is impracticable for purposes of Rule 23(a)(1).

52.     The question is one of a general or common interest of many persons and it is impractical to bring them all before the Court.  The disposition of the claims of the members of the Classes in this class action will substantially benefit both the parties and the Court.

53.   **Commonality:** There are questions of law and fact common to each Class for purposes of Rule 23(a)(2), including:

    a.   Whether and when Defendants actually learned of the data breach and whether its response was adequate;

    b.   Whether Defendants owed a duty to the Class to exercise due care in collecting, storing, safeguarding and/or obtaining their PII;

    c.   Whether Defendants breached that duty;

    d.   Whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and Class members' PII;

    e.   Whether Defendants acted negligently in connection with the monitoring and/or protecting of Plaintiff's and Class members' PII;

    f.   Whether Defendants knew or should have known that they did not employ reasonable measures to keep Plaintiff's and Class members' PII secure and prevent loss or misuse of that PII;

    g.   Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the data breach to occur;

    h.   Whether Defendants caused Plaintiff and Class members damages;

    i.   Whether Defendants violated the law by failing to promptly notify class members that their PII had been compromised;

    j.   Whether Plaintiff and the other Class members are entitled to credit monitoring and other monetary relief;

    k.   Whether Defendants violated California's Deceptive and Unfair Trade Practices Act by failing to implement reasonable security procedures and practice; and

    l.   Whether Defendants violated California's California Consumer Privacy Act by failing to maintain reasonable security procedures and practices appropriate to the nature of the PII.

54.     **Typicality:** Plaintiff assert claims that are typical of the claims of each respective Class for purposes of Rule 23(a)(3). Plaintiff and all members of each respective Class have had their PII compromised as a result of the data breach and Defendants' misconduct.

55.     **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the other members of each respective Class for purposes of Rule 23(a)(4). Plaintiff has no interests antagonistic to those of other members of each respective Class. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent her. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

56.     Class certification is appropriate under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to each Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting each Class as a whole.

57.     Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of each Class.

58.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the members of each respective Class. Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

59.     The injuries sustained by Plaintiff and the members of each Class flow, in each instance, from a common nucleus of operative facts – Defendants' misconduct.

60.     Plaintiff and the members of each Class have been damaged by Defendants' misconduct.

61.     Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy. Members of each Class have suffered and will suffer irreparable harm and damages as a result of Defendants' wrongful conduct. Because of the nature of the individual claims of the members of each Class, few, if any, could or would otherwise afford to seek legal redress against

Defendants for the wrongs complained of herein, and a representative class action is therefore the appropriate, superior method of proceeding and essential to the interests of justice insofar as the resolution of claims of the members of each Class is concerned. Absent a representative class action, members of each Class would continue to suffer losses for which they would have no remedy, and Defendants would unjustly retain the proceeds of its ill-gotten gains. Even if separate actions could be brought by individual members of each Class, the resulting multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create a risk of inconsistent rulings, which might be dispositive of the interests of the other members of each Class who are not parties to the adjudications and/or may substantially impede their ability to protect their interests.

62.  Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.  Whether Defendants owed a legal duty to Plaintiff and the Class members to exercise due care in collecting, storing, using, and safeguarding their PII;

b.  Whether Defendants failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

c.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach; and

d.  Whether Class members are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendants' wrongful conduct.

///

///

///

///

CLASS ACTION COMPLAINT

**FIRST CAUSE OF ACTION**

**NEGLIGENCE**

**(By Plaintiff and the Classes Against All Defendants)**

63.     Plaintiff re-allege and incorporate by reference herein all of the allegations contained in the prior paragraphs.

64.     Defendants owed Plaintiff and Class members a duty to exercise reasonable care in protecting their PII from unauthorized disclosure or access. Defendants breached their duty of care by failing to implement reasonable security procedures and practices to protect Plaintiff's and Class members' PII. Defendants failed to, inter alia: (i) implement security systems and practices consistent with federal and state guidelines; (ii) implement security systems and practices consistent with industry norms; (iii) timely detect the Data Breach; and (iv) timely disclose the Data Breach to impacted customers.

65.     Defendants knew or should have known Plaintiff's and Class members' PII was highly sought after by hackers and that Plaintiff and Class members would suffer significant harm if their PII was stolen by hackers.

66.     Defendants also knew or should have known that timely disclosure of the Data Breach was required and necessary to allow Plaintiff and Class members to take appropriate actions to mitigate the resulting harm. These efforts include, but are not limited to, freezing accounts, changing passwords, monitoring credit scores/profiles for fraudulent charges, contacting financial institutions, and cancelling or monitoring government-issued IDs such as passports and driver's licenses. The risk of significant harm to Plaintiff and Class members (including identity theft) increased as the amount of time between the Data Breach and disclosure lengthened.

67.     Defendants had a special relationship with Plaintiff and the Class members who entrusted Defendants with several pieces of PII. Customers were required to provide PII when utilizing Defendants' properties and/or services. Plaintiff and Class members were led to believe Defendants would take reasonable precautions to protect their PII and would timely inform them if their PII was compromised, but the Defendants did not do so.

///

68.     Defendants' duty to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a).

69.     The Federal Trade Commission ("FTC") has established security guidelines and recommendations to help entities protect PII and reduce the likelihood of data breaches.

70.     Specifically, Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), prohibits "unfair … practices in or affecting commerce," including, as interested and enforced by the FTC, the unfair practices of failing to use reasonable measures to protect PII by companies such as Defendants.

71.     Various FTC publications and data security breach orders further form the basis of Defendants' duty[16]. Plaintiff and Class members are consumers under the FTC Act. Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with industry standards.

72.     In addition, Cal. Civ. Code § 1798.81.5 requires Defendants to take reasonable steps and employ reasonable methods of safeguarding the PII of Class members who are California residents.

73.     Defendants violated the FTC Act and the CCPA by failing to use reasonable security measures to protect PII and not complying with applicable industry, federal and state guidelines and standards. Defendant's conduct was particularly unreasonable given the nature and amount of customer PII it stored and the foreseeability and resulting consequences of a data breach.

74.     Plaintiff and Class members are part of the Class of persons the FTC Act and CCPA were intended to protect. The harm that was proximately caused by the Data Breach is the type of harm the FTC Act and CCPA were intended to guard against. The FTC has brought enforcement actions against entities that, due to a failure to employ reasonable data security measures, caused the same harm as that suffered by Plaintiff and Class members here.

75.     As a result of Defendants' negligence, Plaintiff and Class members suffered injuries that may include: (i) the lost or diminished value of PII; (ii) out-of-pocket expenses associated with

---

[16] See, e.g., Data Protection: Actions taken by Equifax and Federal Agencies in Response to the 2017 Breach, United States Government Accountability Office (Aug. 30, 2019), available at: https://www.gao.gov/products/GAO-18-559 (regarding the Equifax data breach)(last accessed Aug. 30, 2022).

the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the data breach, including but not limited to time spent deleting phishing email messages and cancelling credit cards believed to be associated with the compromised account; (iv) the continued risk to their PII, which remains for sale on the dark web and is in Defendant's possession, subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of customers and former customers in their continued possession; (v) future costs in terms of time, effort, and money that will be expended to prevent, monitor, detect, contest, and repair the impact of the PII compromised as a result of the data breach for the remainder of the lives of Plaintiff and Class members, including ongoing credit monitoring.

76.     The harm that Plaintiff and Class members suffered (and continue to suffer) was the reasonably foreseeable product of Defendants' breach of their duty of care. Defendants failed to enact reasonable security procedures and practices and Plaintiff and Class members were the foreseeable victims of data theft that exploited the inadequate security measures. The PII accessed in the Data Breach is precisely the type of information that hackers seek and use to commit cyber crimes.

## CAUSE OF ACTION TWO
## DECLARATORY JUDGMENT
### (On Behalf of Plaintiff and the Nationwide Class)

77.     Plaintiff re-allege and incorporate by reference herein all of the allegations contained in the above paragraphs.

78.     Defendants owe duties of care to Plaintiff and Class members which would require it to adequately secure PII.

79.     Defendants still possess PII regarding Plaintiff and Class members.

80.     Plaintiff and Class members' PII is still for sale on the dark web.

81.     Although Defendants claim they are "doing additional reviews to ensure that the security of all of [their] systems is further hardened to prevent future incursions." there is no detail on what, if any, fixes have really occurred.

82.     Plaintiff and Class members are at risk of harm due to the exposure of their PII and Defendants' failure to address the security failings that lead to such exposure.

83.     There is no reason to believe that Defendants' security measures are any more adequate than they were before the breach to meet Defendants' contractual obligations and legal duties, and there is no reason to think Defendants have no other security vulnerabilities that have not yet been knowingly exploited.

84.     Plaintiff, therefore, seek a declaration that (1) each Defendants' existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect customers' personal information, and (2) to comply with its explicit or implicit contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to:

a.  Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

b.  Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

c.  Ordering that Defendants audit, test, and train its security personnel regarding any new or modified procedures;

d.  Ordering that Defendants user applications be segmented by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendants' systems;

e.  Ordering that Defendants conduct regular database scanning and securing checks;

f.  Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

g. Ordering Defendants to purchase credit monitoring services for Plaintiff and Class members for a period of ten years; and

h. Ordering Defendants to meaningfully educate its users about the threats they face as a result of the loss of their PII to third parties, as well as the steps Defendants customers must take to protect themselves.

**CAUSE OF ACTION THREE**

**VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT § 1798.150**

**(By Plaintiff and the members of the California Class Against Defendants)**

85. Plaintiff repeat and reallege the allegations set forth in the preceding paragraphs.

86. Defendants violated § 1798.150 of the CCPA by failing to prevent Plaintiff's and Class members' nonencrypted PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

87. Defendants collect consumers' personal information as defined in Cal. Civ. Code § 1798.140. Defendants have a duty to implement and maintain reasonable security procedures and practices to protect this personal information. As identified herein, Defendants failed to do so. As a direct and proximate result of Defendants' acts, Plaintiff's and Class members' personal information, including unencrypted names, emails and passwords among other information, was subjected to unauthorized access and exfiltration, theft, or disclosure.

88. Plaintiff and Class members seek injunctive or other equitable relief to ensure Defendants hereinafter adequately safeguard customers' PII by implementing reasonable security procedures and practices. Such relief is particularly important because Defendants continue to hold customers' PII, including Plaintiff's and Class members' PII. These individuals have an interest in ensuring that their PII is reasonably protected.

89. On September 1, 2022, Plaintiff's counsel sent a notice letter to Defendants registered service agent. Assuming Defendants cannot cure the Data Breach within 30 days, and Plaintiff believes such cure is not possible under these facts and circumstances, then Plaintiff intend to promptly amend this complaint to seek actual damages and statutory damages of $750 per

19

1  customer record subject to the Data Breach on behalf of the California Class as permitted by the

2  CCPA.

### CAUSE OF ACTION FOUR

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW

### CAL. BUS. & PROF. CODE § 17200 – UNLAWFUL BUSINESS PRACTICES

**(On Behalf of Plaintiff and the Nationwide Class, Or In The Alternative,**

**On Behalf of the California Class)**

8      90.    Plaintiff repeat and reallege the allegations set forth in the preceding paragraphs.

9      91.    Defendants have violated Cal. Bus. and Prof. Code § 17200, et seq., by engaging in

10  unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or

11  misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof.

12  Code § 17200 with respect to the services provided to the California Class.

13      92.    Defendants engaged in unlawful acts and practices with respect to the services by

14  establishing the sub-standard security practices and procedures described herein; by soliciting and

15  collecting Plaintiff's and California Class members' PII with knowledge that the information would

16  not be adequately protected; and by storing Plaintiff's and California Class members' PII in an

17  unsecure electronic environment in violation of California's data breach statute, Cal. Civ. Code §

18  1798.81.5, which requires Defendants to take reasonable methods of safeguarding the PII of

19  Plaintiff and the California Class members.

20      93.    In addition, Defendants engaged in unlawful acts and practices by failing to disclose

21  the data breach to California Class members in a timely and accurate manner, contrary to the duties

22  imposed by Cal. Civ. Code § 1798.82.

23      94.    As a direct and proximate result of Defendants unlawful practices and acts, Plaintiff

24  and the California Class members were injured and lost money or property, including but not

25  limited to the price received by Defendants for the services, the loss of California Class members'

26  legally protected interest in the confidentiality and privacy of their PII, nominal damages, and

27  additional losses as described above.

28  ///

95.     Defendants knew, or should have known, that its computer systems and data security practices were inadequate to safeguard California Class members' PII and that the risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the California Class.

96.     California Class members seek relief under Cal. Bus. & Prof. Code § 17200, et seq., including, but not limited to, restitution to Plaintiff and California Class members of money or property that Defendants may have acquired by means of its unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to Defendants because of its unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, requests the following relief:

1. A determination that this action is a proper class action under Federal Rule of Procedure Rule 23, certifying Plaintiff as Class representative, and appointing the undersigned counsel as Class counsel;

2. An award of compensatory damages, punitive damages, statutory or civil penalties to Plaintiff and the Classes as warranted by applicable law[17];

3. An order instructing Defendants to purchase or provide funds for credit monitoring services for Plaintiff and all Class members;

4. Injunctive or other equitable relief that directs Defendants to implement reasonable security procedures and practices to protect customers' PII that conform to relevant federal and state guidelines and industry norms;

5. Awarding Plaintiff and the Classes reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

---

[17] Plaintiff is not presently seeking civil penalties pursuant to the California Privacy Act but will amend to do so once she has complied with the statutory pre-filing notice requirements

6.   Such other relief as the Court may deem just and proper.

Dated: September 1, 2022                    **BRADLEY/GROMBACHER LLP**

By: _/s/ Kiley L. Grombacher, Esq._
Marcus J. Bradley, Esq.
Kiley L. Grombacher, Esq.
Lirit A. King, Esq.
Attorneys for Plaintiff and
the proposed Class

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a jury trial for all claims so triable.

Dated: SEPTEMBER 1, 2022                    **BRADLEY GROMBACHER, LLP**

By: _/s/ Kiley L. Grombacher, Esq._
Marcus J. Bradley, Esq.
Kiley L. Grombacher, Esq.
Lirit A. King, Esq.
Attorneys for Plaintiff and
the proposed Class

CLASS ACTION COMPLAINT