UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| REBECKA MILLER, | Case No.  22-cv-05015-SVK |
| Plaintiff, |  |
| v. | **ORDER ON DEFENDANTS' MOTION TO COMPEL ARBITRATION** |
| PLEX, INC., et al., | Re: Dkt. Nos. 12, 15, 18, 19, 22, 26, 27, 28 |
| Defendants. |  |

Defendants Plex, Inc. and Plex, GmbH (together, "Defendants" or "Plex") bring the instant motion to compel arbitration of Plaintiff Rebecka Miller's ("Plaintiff") complaint for violation of the California Consumer Privacy Act, California's Unfair Competition Law, negligence, and declaratory relief.  Dkts. 1, 12.  Plex seeks an order pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, compelling Plaintiff to arbitrate her claims against Plex, and staying this action pending the completion of arbitration proceedings.  The Parties have consented to the jurisdiction of a magistrate judge.  Dkts. 9, 13.

Having carefully considered the papers submitted, the pleadings in this action, the admissible evidence,[1] and the arguments of counsel, and for the reasons set forth below, the Court **GRANTS** Defendants' motion to compel arbitration.

## I.      BACKGROUND

### A.      Factual Background

Plaintiff is an individual and a resident of California.  Dkt. 1 ("Compl.") ¶ 19.  Defendant Plex, Inc. is a Delaware corporation with its principal place of business in California, and Defendant Plex GmbH is a Swiss corporation that maintains an office in California.  *Id.* ¶¶ 23-24.  Plex is an online entertainment platform that combines streaming services from media publishing

---

[1] Plex's evidentiary objections are addressed herein in Section III(A).

partners and a user's personal media library, which a user can view through Plex's website or on other devices via Plex's application.  Compl. ¶ 1; Dkt. 12-1 ("Castro Decl. I") ¶ 5.

To access Plex's services, a user first must create an account with Plex.  Compl. ¶ 2; Castro Decl. I ¶ 6.  To create an account, both desktop and mobile users must provide an email address, create a password, and agree to Plex's Terms of Service ("TOS").[2]  Castro Decl. I ¶ 8; Dkt. 26, Ex. 1 to Liu Decl. ("Castro Decl. III") ¶ 5.  A screenshot of the webpage that users encounter when seeking to create a Plex account is set forth below:

---

[2] Plaintiff refers to this process as the creation of a "user profile" in her Complaint and declarations.  Dkt. 1 ¶¶ 2, 19; Dkt. 17 (Miller Decl.) ¶ 2; Dkt. 27-1 (Miller Supp. Decl.) ¶ 3.  Plex, by contrast, refers to this process as the creation of an "account."  *See, e.g.*, Dkt. 12-1 (Castro Decl. I) ¶¶ 6, 8; Dkt. 18-1 (Castro Decl. II) ¶¶ 9-10; Dkt. 26, Ex. 1 to Liu Decl. ("Castro Decl. III") ¶ 5; Dkt. 26, Ex. 2 to Liu Decl. ("Castro Decl. IV") ¶ 4; Dkt. 30 ("Castro Decl. V") ¶ 3.  The Parties refer to the same process, but for sake of simplicity, the Court shall use the term "account" rather than "profile."

1
2
3
4
5
6
7
8
9
10
11

United States District Court
Northern District of California

12
13
14
15
16
17
18
19



20   Castro Decl. I, Ex. 2; Castro Decl. III ¶ 8 (hereinafter, the "Sign Up Page").

21        The main "Create Your Account" graphic displayed on the webpage was created in 2017

22   and last updated in 2019.  Castro Decl. III ¶ 9.  The image has been continuously in use since

23   April 2020 and has not changed in any material respect since that time with the exception that the

24   "Continue with Google" button was changed from red to white in 2023.  *Id.*  The textual notice

25   beneath the yellow-colored "Create an account" button has not changed since April 2020, has

26   always been entirely visible on the Sign Up Page, and provides as follows:

27
28

3

> By creating an account or continuing to use a Plex application, website,
> or software, you acknowledge and agree that you have accepted the
> **Terms of Service** and have reviewed the **Privacy Policy**.

Castro Decl. I ¶ 8; Castro Decl. III ¶ 11.  The bolded phrase "Terms of Service" is a hyperlink

that, if clicked on, will take the user directly to Plex's Terms of Service.  Castro Decl. I ¶ 9; Castro

Decl. III ¶ 6.  Plex's TOS includes an arbitration provision, which provides:

> 23. ARBITRATION. You agree that all disputes between you and Plex
> (whether or not such dispute involves a third party) with regard to your
> relationship with Plex, including, without limitation, disputes related to this
> TOS, your use of the Plex Solution, and/or rights of privacy and/or
> publicity, will be resolved by binding, individual arbitration. Without
> limiting Plex's right to seek injunctive or other equitable relief (as set forth
> below), any disputes arising with respect to this TOS between you and Plex
> ("parties") shall be referred to an arbitrator affiliated with the Judicial
> Arbitration and Mediation Services, Inc. ("JAMS"). The arbitrator shall be
> selected by joint agreement of the parties. In the event the parties cannot
> agree on an arbitrator within thirty (30) days of the initiating party providing
> the other party with written notice that it plans to seek arbitration, the parties
> shall each select an arbitrator affiliated with JAMS, which arbitrators shall
> jointly select a third such arbitrator to resolve the dispute. Arbitration shall
> be conducted under the rules then prevailing of JAMS/ENDISPUTE
> Streamlined Arbitration Rules and Procedures in effect at the time of filing of the
> demand for arbitration. The parties specifically incorporate the terms
> of California Code of Civil Procedure Section 1283.05 with respect to
> discovery. The arbitrator's award shall be binding and may be entered as a
> judgment in any court of competent jurisdiction. The arbitration proceeding
> shall be carried on and heard in Santa Clara County, California using the
> English language. In any action or proceeding to enforce rights under this
> TOS, the prevailing party will be entitled to recover costs and reasonable
> attorneys' fees from the other party. You may bring claims only on your
> own behalf. Neither you nor Plex will participate in a class-wide arbitration
> for any claims covered by this TOS. This dispute resolution provision will
> be governed by the Federal Arbitration Act.

Castro Decl. I ¶ 12, Ex. 1 ¶ 23.  Another provision contains a class action waiver:

> 21. LIMITATION OF LIABILITY. . . .You and Plex agree to only bring claims
> arising from this TOS on an individual basis and not as a plaintiff or class member
> in any purported class or representative action or proceeding. Unless you and Plex
> agree otherwise, more than one person's or party's claims may not be consolidated.
> You and Plex agree that relief (including monetary, injunctive, and declaratory
> relief) may be awarded only in favor of the individual party seeking relief and only
> to the extent necessary to provide relief necessitated by that part's individual
> claim(s)

*Id.* ¶ 11, Ex. 1 ¶ 21.  These provisions are the same provisions in effect when Plaintiff created her

1   account in 2021, as Plex's TOS were last revised as of January 1, 2020.  Castro Decl. I ¶¶ 6, 14.

2        An individual may create new credentials with Plex or use his Google, Facebook, or Apple

3   credentials to create a Plex account.  Castro Decl. I, Ex. 1.; Castro Decl. III ¶ 8. A screenshot of

4   the screen that users encounter if they elect to "Continue with Google" is set forth below:



18   Dkt. 18-1 ("Castro Decl. II") ¶ 8 (the "Google Sign In Page").  Plex's records indicate that

19   Plaintiff created an account on Plex's website on April 27, 2021.  *Id.* ¶ 13.  Plaintiff adds that she

20   created her account using an Android phone and, "to the best of [her] recollection," used her

21   Google credentials to create her Plex account.  Compl. ¶ 19; Dkt. 17 ("Miller Decl.") ¶¶ 3-4; Dkt.

22   27-1 ("Supp. Miller Decl.") ¶ 3.  The Sign Up Page is the Plex-hosted webpage Plaintiff would

23   have seen when she made her account in 2021.  Castro Decl. III ¶¶ 8-9; Dkt. 26 ("Liu Decl.") Ex.

24   3 ("Castro Depo Transcript") 45:24-46:10.

25        On August 23, 2022, Plex notified its users that a data breach had occurred, which resulted

26   in the potential disclosure of email addresses, usernames, and passwords.  Compl. ¶¶ 3-4.  Plaintiff

27   filed this putative class action on September 1, 2022.  Dkt. 1.

28

### B.      Procedural History

Plex moved to compel arbitration on October 25, 2022, which Plaintiff opposed.  Dkts. 12, 15, 18.  Plex objected to the evidence Plaintiff supplied in support of her opposition.  Dkt. 19.  On December 13, 2022, the Parties appeared for a hearing on Plex's motion to compel.  Dkt. 21.  At the hearing, Plaintiff raised for the first time that the supplemental declaration of Ricardo Castro, which Plex filed in support of its reply, failed to attest to the appearance of Plex's user interface *at the time* Plaintiff created her account in 2021.  Accordingly, the Court ordered limited discovery into the appearance of the user interface as it existed when Plaintiff registered for Plex's services.  Dkt. 22.  The Court further authorized supplemental briefing in the event the Parties were unable to resolve the dispute after the completion of this discovery.  *Id.*  Following discovery, Plex and Plaintiff filed supplemental briefs.  Dkts. 26, 27.  After reviewing this briefing, the Court ordered Plex to file a reply that responded to an evidentiary issue Plaintiff raised for the first time in supplemental briefing—namely, that Plex had submitted screenshot evidence from a desktop computer rather than from a mobile device.  Dkt. 27 at 1; Dkt. 28.  Plex has filed its reply, and the motion to compel is now ripe for resolution.  Dkt. 29.

## II.      LEGAL STANDARD

The Federal Arbitration Act applies to arbitration agreements in any contract affecting interstate commerce and governs the petition to compel arbitration here.  9 U.S.C. §§ 1, *et seq.*  "The FAA limits the district court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).  Where all claims in the case are subject to a valid arbitration agreement, the Court may dismiss or stay the case.  *Regan v. Pinger, Inc.*, No. 20-cv-2221, 2021 WL 706465, at *3 (N.D. Cal. Feb. 23, 2021).

Interpretation of an arbitration agreement generally turns on state law.  *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009).  However, the U.S. Supreme Court has instructed that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute," and that "[t]he court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    arbitration agreement within the coverage of the Act.'"  *Mitsubishi Motors Corp. v. Soler*

2    *Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting Moses H. Cone Mem. Hosp. v.

3    Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).  "Whether a dispute is arbitrable under federal law

4    turns on two questions: (1) whether the parties agreed to arbitrate; and, if so, (2) whether the scope

5    of the agreement to arbitrate encompasses the claims at issue."  *Regan*, 2021 WL 706465, at \*4

6    (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)).   Challenges to the validity

7    of a contract containing an arbitration clause may be decided by an arbitrator, but "challenges to

8    the very existence of the contract are, in general, properly directed to the court."  *Kum Tat Ltd. v.*

9    *Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017).  Accordingly, "[i]n determining

10   whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles

11   that govern the formation of contracts.'"  *Nguyen*, 763 F.3d at 1175 (citation omitted).  While a

12   court determining whether parties have agreed to arbitrate a dispute applies "general state-law

13   principles of contract interpretation," the court must still give "due regard to the federal policy in

14   favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."

15   *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v.*

16   *Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)).  Consequently, "[t]he standard for

17   demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an

18   arbitration motion, since the [FAA] is phrased in mandatory terms."  *Republic of Nicaragua v. Std.*

19   *Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

20   **III.    DISCUSSION**

21          In opposing Plex's motion to compel arbitration, Plaintiff chiefly argues that she never

22   entered into an agreement with Plex and that, even if she did, the arbitration provision and class

23   action waiver are unconscionable and invalid.  Dkt. 15.  Plaintiff has submitted declarations

24   denying that she was required to view Plex's notice of the TOS when she created her account and

25   denying that she saw any such notice.  Dkt. 17 (Miller Decl.) ¶ 4; Dkt. 27-1 (Supp. Miller Decl.)

26   ¶¶ 5, 8-10.  Plaintiff also has submitted the declarations of her counsel, Kiley Grombacher, and

27   various attached exhibits.  Dkts. 15-1 ("Grombacher Decl."), 27-2 ("Supp. Grombacher Decl.").

28   Plex objects to the bulk of Ms. Grombacher's exhibits.

United States District Court
Northern District of California

7

1    The Court first takes up Plex's evidentiary objections and then evaluates Plex's motion to

2    compel arbitration.

3        **A.    Plex's Evidentiary Objections**

4            **1.    Screenshots**

5        Plaintiff's first declaration contains two screenshots embedded in one of the paragraphs,

6    which Plaintiff asserts were "pulled from Plex's current websites[.]"  Dkt. 17 ¶ 4.  Plaintiff relies

7    heavily on these screenshots to prove that Plex's notice regarding its terms of service is not

8    "reasonably conspicuous," as required under Ninth Circuit precedent.  Dkt. 15 at 9.  Specifically,

9    Plaintiff points out that her screenshots do not show the key notice language advising users that by

10    continuing to create a Plex account, they are agreeing to Plex's TOS.  *See id.* at 3-4, 9-10.  Users

11    must scroll down to see that language.  *See id.*  Nor, she claims, does the Google sign-in page

12    notify users that continuing to create a Plex account indicates their assent to Plex's TOS.  *See id.*

13    at 4, 10.  In her declaration, Plaintiff does not provide any information as to who took the

14    screenshots, when they were taken, and on what device. Plex objects that these screenshots have

15    not been authenticated and constitute hearsay.  Dkt. 19.  The Court agrees.

16        In considering whether an arbitration agreement was formed, "[t]he summary judgment

17    standard is appropriate because the district court's order compelling arbitration 'is in effect a

18    summary disposition of the issue of whether or not there had been a meeting of the minds on the

19    agreement to arbitrate.'"  *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021)

20    (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)).

21    Pursuant to Rule 56, "[a] party may object that the material cited to support or dispute a fact

22    cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. Proc. 56(c)(2).

23        Under Federal Rule of Evidence 901, "[t]o satisfy the requirement of authenticating or

24    identifying an item of evidence, the proponent must produce evidence sufficient to support a

25    finding that the item is what the proponent claims it is."  Fed. R. Evid. 901.  Rule 901 offers a

26    non-exhaustive list of methods of authenticating evidence, including "Testimony of a Witness

27

28

1    with Knowledge." Fed. R. Evid. 901(b).[3]  "A screenshot of online content may be authenticated

2    by testimony of the person who took the screenshot, so long as the screenshot also contains

3    circumstantial indicia of authenticity." *Iglesia Ni Cristo v. Cayabyab*, No. 18-cv-0561, 2020 WL

4    1531349 (N.D. Cal. Mar. 31, 2020) (citing *Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 717 (N.D. Fla.

5    2019)).  Alternatively, "[e]xhibits depicting online content may be authenticated by a person's

6    testimony that he is familiar with the online content and that the exhibits are in the same format as

7    the online content." *Id.* (quoting *United States v. Needham*, 852 F.3d 830, 836 (8th Cir. 2017)).

8         Plaintiff fails to offer any testimony from the person who took the screenshots that appear

9    in her declaration or any other evidence to authenticate the screenshots.  *See* Dkt. 17 (Miller Decl.)

10   ¶ 4.  The screenshots also lack circumstantial indicia of authenticity, as they appear to have been

11   taken on different devices.  *See id.*  For example, in Plaintiff's declaration, the screenshot of Plex's

12   "Sign Up Page" has a dark grey tab bar with blue icons and a light grey search bar; the "Google

13   Sign In Pop Up" screenshot has a light grey tab bar with white icons and a black search bar.  *See*

14   *id.*  Under similar circumstances, district courts within the Ninth Circuit have found screenshots of

15   internet content to be inadmissible in the context of a motion to compel arbitration.  For instance,

16   in *La Force v. GoSmith, Inc.*, the district court found that screenshots had not been sufficiently

17   authenticated where counsel's declaration included the date, device, and browser used to obtain

18   the webpage and application screenshots but failed to verify that he personally took those

19   screenshots.  *See La Force v. GoSmith, Inc.*, No. 17-cv-5101, 2017 WL 9938681, at *3 (N.D. Cal.

20   Dec. 12, 2017); *see also Iglesia Ni Cristo*, 2020 WL 1531349, at *4 (sustaining objections to

21   screenshots for lack of authentication in ruling on motion for summary judgment).  Accordingly,

22   based on Rule 901 and the cases applying it, Plex's objection to the screenshots submitted in

23   Plaintiff's declaration [Dkt. 17] is SUSTAINED.  The screenshots have not been authenticated and

24   will not be considered in ruling on the motion to compel arbitration.

25   _____

26   [3] Courts within the Ninth Circuit disagree as to whether screenshots may be considered self-
     authenticating.  *Compare La Force v. GoSmith, Inc.*, No. 17-cv-5101, 2017 WL 9938681

27   _____, at *3 (N.D. Cal. Dec. 12, 2017) *with Iglesia Ni Cristo v. Cayabyab*,
     No. 18-cv-0561, 2020 WL 1531349, at *4 n.3 (N.D. Cal. Mar. 31, 2020).  The Court need not

28   resolve this dispute, as Plaintiff has not offered the "certification of a qualified person" and
     therefore cannot meet the requirements of Federal Rule of Evidence 902(13).

### 2.   Plaintiff's Declarations

Both Plaintiff's declaration and supplemental declaration contain multiple qualified assertions based on the "best of [her] knowledge" and the "best of [her] recollection." Dkts. 17 (Miller Decl.), 27-1 (Supp. Miller Decl.). For example, she asserts, "[t]o the best of my recollection, I was not required to view the website's Terms prior to signing up for service or at any other time." Supp Miller Decl. ¶ 8. She also asserts that, "I do not recall ever seeing or reviewing the Terms of Service." *Id.* ¶ 5. Plex urges the Court to disregard such conclusory statements. Dkts. 18-19, 31.

It is unclear to what extent Plaintiff's statements based on the "best of" her knowledge or recollection are intended to contradict Plex's positive assertions that she would have been required to agree to the TOS before creating an account. Courts in this district have found cause to disregard similarly qualified statements. *See, e.g.*, *Vista v. USPlabs, LLC*, No. 14-cv-0378, 2014 WL 5507648, at *3 (N.D. Cal. Oct. 30, 2014) (finding conclusory statements in declaration based on "the best of" the witness' knowledge insufficient to controvert plaintiff's factual allegations); *Bates v. Arata*, No. 05-cv-3383, 2008 WL 820578, at *27-28 (N.D. Cal. Mar. 26, 2008) (finding plaintiff's conclusory statement based on "best of my knowledge" that SFSD discriminated against her failed to specifically rebut defendant's evidence that SFSD's conduct was not racially motivated and granting summary judgment on Unruh Act claim). Likewise, a "bare assertion" that consumers do not recall agreeing to terms of service when creating accounts does not overcome evidence that a consumer had to agree to terms of service when creating an account. *See, e.g.*, *Houtchens v. Google LLC*, No. 22-cv-2638, 2023 WL 122393, at *4 (N.D. Cal. Jan. 6, 2023) (finding plaintiffs' "bare assertion that they do not recall" checking box agreeing to Fitbit's terms of service when creating their accounts insufficient to "overcome Google's evidence"); *Crawford v. Beachbody, LLC*, No. 14-cv-1583, 2014 WL 6606563, at *2 (S.D. Cal. Nov. 5, 2014) (concluding plaintiff assented to sign-in wrap terms of service even though plaintiff averred that she did "not recall seeing or agreeing to any terms and conditions on the BeachBody website"). This Court likewise does not find such vague statements sufficient to contradict Plex's evidence and SUSTAINS Plex's objections.

### 3.   Ms. Grombacher's Declarations

Kiley Grombacher, Plaintiff's counsel, offers declarations in support of both Plaintiff's opposition to compel arbitration and Plaintiff's supplemental brief.  Dkts. 15-1 ("Grombacher Decl. I"), 27-2 (Supp. Grombacher Decl.).  Plex objects to portions of both declarations.  Dkts. 19, 31.  The Court takes these objections in order.

In her first declaration, Ms. Grombacher states, "[a]attached as Exhibit B, [sic] are the results of the Readability Statistics run through the Microsoft Word program."  Grombacher Decl. I ¶ 6.  Plex asserts relevance, hearsay and authentication objections to this statement and to the attached exhibit.  Dkt. 19.  These objections are well taken.  Ms. Grombacher's declaration fails to authenticate the exhibit, which appears to be a computer screenshot, in accordance with Federal Rule of Evidence 901, and the evidence is not self-authenticating under Federal Rule of Evidence 902.  *See La Force*, 2017 WL 9938681, at *3; *see also Iglesia Ni Cristo*, 2020 WL 1531349, at *4.  Further, as discussed below, the Court concludes that Plaintiff's unconscionability and validity challenges must be decided by the arbitrator.  Plex's evidentiary objections are, accordingly, SUSTAINED.

In her second declaration, Ms. Grombacher attaches screenshots of Plex's sign up page as it appeared on her iPhone's browser and as it appeared on her secretary's browser.  Supp. Grombacher Decl. ¶¶ 6, 9, Exs. 2-3.  She also purports to quote the specifications of her phone and her secretary's iPhones based on information from Apple's website.  *Id.* ¶¶ 7, 11.  Plex asserts a variety of objections to these statements and exhibits, which the Court likewise finds appropriate.  Dkt. 31.  For reasons discussed below, Plex's objection as to relevance is SUSTAINED.

### 4.   Request for Judicial Notice

Plaintiff asks the Court to take judicial notice of a docket entry in the case *Kim v. Tinder, Inc.*, No. 18-cv-3093, which appears to be a screenshot from a case in the United States District Court for the Central District of California.  Grombacher Decl. ¶ 7, Ex. C; *see also* Dkt. 15 at 10.  Plex does not oppose Plaintiff's request.  *See* Dkts. 18-19.

A court may take judicial notice of documents outside of the complaint that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

United States District Court
Northern District of California

11

1    Fed. R. Evid. 201(b)(2). Court records and matters of public record are proper subjects of judicial

2    notice. *See Roca v. Wells Fargo Bank*, No. 15-cv-02147, 2015 WL 2598749, at *4 (N.D. Cal.

3    Sep. 29, 2015); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Because the

4    document is a court record, and therefore a proper subject of judicial notice, the Court GRANTS

5    Plaintiff's request for judicial notice.

6        **B.    Plex's Motion to Compel Arbitration**

7        Plex contends that the arbitration provision in its TOS requires the Court to compel

8    arbitration. Plaintiff disputes this contention, arguing that she never entered into an agreement to

9    arbitrate and that the arbitration and class action waiver provisions are unenforceable and invalid.

10    The Court addresses each argument in turn.

11        **1.    Formation of the Agreement**

12        "In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary

13    state law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763

14    F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938,

15    944 (1995)). The moving party bears the burden of proving by a preponderance of the evidence

16    that an agreement to arbitrate exists. *Norcia v. Samsung Tel. Am., LLC*, 845 F.3d 1279, 1283 (9th

17    Cir. 2017).

18        Under California law, a valid contract requires the mutual consent of the parties. *Monster*

19    *Energy Co. v. Schechter*, 7 Cal. 5th 781, 789 (2019). "'The existence of mutual consent is

20    determined by objective rather than subjective criteria, the test being what the outward

21    manifestations of consent would lead a reasonable person to believe. Accordingly, the primary

22    focus in determining the existence of mutual consent is upon the acts of the parties involved.'" *Id.*

23    (citations omitted).

24        "These elemental principles of contract formation apply with equal force to contracts

25    formed online." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855-56 (9th Cir. 2022).

26    Accordingly, where a website offers contractual terms to website users, and a user engages in

27    conduct manifesting acceptance of those terms, a binding agreement can be formed. *Id.* at 856.

28    The Ninth Circuit has explained that internet agreements generally can be classified as

United States District Court
Northern District of California

12

1  "clickwrap" or "browsewrap" agreements.  *Id.*  In a clickwrap agreement, "a website presents

2  users with specified contractual terms on a pop-up screen and users must check a box explicitly

3  stating 'I agree' in order to proceed."  *Id.*  Courts have routinely found such agreements to be

4  enforceable.  *Id.*  Browsewrap agreements, by contrast, do not require the user to manifest express

5  consent to specific terms.  *Id.*  Rather, "a website offers terms that are disclosed only through a

6  hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the

7  website."  *Id.*  Courts generally have been more reluctant to enforce such agreements "because

8  consumers are frequently left unaware that contractual terms were even offered, much less that

9  continued use of the website will be deemed to manifest acceptance of those terms."  *Id.* (quoting

10  *Nguyen*, 763 F.3d at 1178).

11      However, existing between the poles of "clickwrap" and "browsewrap" is a third form of

12  agreement—the "sign-in wrap."   Sign-in wrap, or "signwrap," agreements "are those in which a

13  user signs up to use an internet product or service, and the sign-up screen states that acceptance of

14  a separate agreement is required before the user can access the service.  While a link to the

15  separate agreement is provided, users are not required to indicate that they have read the

16  agreement's terms before signing up."  *Id.* at 865-66 (Baker, J., concurring) (quoting *Sellers v.*

17  *JustAnswer LLC*, 73 Cal. App. 5th 444, 464 (2021)); *see also Snow v. Eventbrite, Inc.*, No. 20-cv-

18  3698, 2020 WL 6135990, at *4 (N.D. Cal. Oct. 19, 2020) ("A third type of internet contract, the

19  'sign-in wrap' agreement, has also developed and is sometimes regarded as a 'blend' or 'hybrid'

20  of the two.").  "Unless the website operator can show that a consumer has actual knowledge of the

21  agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the

22  website provides reasonably conspicuous notice of the terms to which the consumer will be

23  bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that

24  unambiguously manifests his or her assent to those terms."  *Berman*, 30 F.4th at 856.

25      Here, Plaintiff posits that Plex uses a browsewrap agreement, Dkt. 15 at 8, while Plex

26  maintains that it uses a sign-in wrap agreement, Dkt. 18 at 5.  Whereas Plaintiff offers nothing

27  beyond the bare assertion that "the Plex website utilizes a browsewrap agreement," Dkt. 15 at 8,

28  Plex has submitted evidence that, "in order to complete the registration process, a user agrees and

United States District Court
Northern District of California

13

1    acknowledges that to 'Create an Account', the user must agree to Plex's TOS as set forth on

2    Plex's 'Sign Up' page."  Castro Decl. I ¶ 8.  The 'Sign Up' page provides, "By creating an account

3    or continuing to use a Plex application, website or software, you acknowledge and agree that you

4    have accepted the **Terms of Service** and have reviewed the **Privacy Policy**."  *Id.* (emphasis in

5    original).  Plex further avers that "[n]o user can complete the 'Sign Up' process without

6    confirming that the user agrees and accepts the TOS."  *Id.* at ¶ 10.  Because the user is purportedly

7    bound by Plex's TOS by clicking to "Create an Account" or "Continue with Google," and cannot

8    create an account without affirmatively acknowledging the agreement, the Court concludes that

9    Plex's agreement is most accurately characterized as a sign-in wrap agreement.  *See, e.g.*, *Lee v.*

10   *Ticketmaster*, 817 Fed. App'x 393, 394-95 (9th Cir. 2020) (concluding Ticketmaster's terms of

11   use was neither a browsewrap nor a clickwrap agreement but finding sufficient notice for

12   constructive assent nevertheless and affirming decision granting motion to compel arbitration);

13   *Britt v. ContextLogic, Inc.*, No. 20-cv-4333, 2021 WL 1338553, at *5-6 (N.D. Cal. Apr. 9, 2021)

14   (granting motion to compel arbitration where defendants produced evidence of valid sign-in wrap

15   agreement).

16        Having determined the type of agreement at issue, the Court next turns to considering

17   whether Plaintiff was on inquiry notice under *Berman*.  Plaintiff argues, however, that the Court

18   cannot perform a *Berman* analysis because Defendant has not produced sufficient evidence.

19   First, at the hearing, Plaintiff argued that Plex had failed to present any evidence of the appearance

20   of the Sign Up Page when Plaintiff created her account in 2021.  *See* Dkts. 21-22.  Following

21   limited discovery, Plex has produced unrefuted evidence that the Sign Up Page, as reflected in

22   Castro Decl. III ¶ 8 and Exhibit 2 to Castro Decl. I, is the webpage Plaintiff encountered when she

23   made her account in 2021.  Castro Decl. I, Ex. 2; Castro Decl. III ¶¶ 9-10; Castro Deposition

24   Transcript 45:24-46:10.

25        Abandoning this objection, Plaintiff now objects that Plex has failed to offer evidence as to

26   the appearance of Plex's sign up page for mobile users.  Dkt. 27 at 1.  In support of this argument,

27   Plaintiff notes that in his deposition, Mr. Castro testified that the screenshots in his supporting

28   declarations were "likely" taken on a desktop computer and not a mobile device.  Dkt. 27-3 (Ex. 1

United States District Court
Northern District of California

14

1    to Grombacher Decl.) at 44:24-45:10; 46; 11-24; 47:7-15.  She further points out that Mr. Castro

2    testified that "presentation" on a mobile device as compared to a desktop "is different because of

3    the screen size."  Dkt. 27 at 1 (quoting Dkt. 27-3 at 37:13-20.).  The mobile device appearance

4    also differs because the mobile website lacks "breakpoints that trigger adjustments to fit the

5    images and content to the user's screen size/resolution."  *Id.* (quoting Dkt. 27-3 at 54:15-20).

6    Based on these statements, Plaintiff argues that Plex cannot prove that the notice language would

7    have been visible to a mobile website user.  *Id.* at 2.

8           Plex responds by pointing out that, as set forth above, it has presented evidence that the

9    "Create Your Account" image has been in use and substantially unchanged on the Sign Up Page

10   since April 2020.  Castro Decl. III ¶ 9.  Plex also provides a supplemental declaration from Mr.

11   Castro, in which he avers that "[s]ince January 1, 2021 to the present, Plex's entire Sign Up Page

12   is completely viewable on a Google Android mobile phone, subject to a user's settings on the

13   phone that may adjust the size of the text of content on the phone."  Dkt. 30 ("Castro Decl. V") ¶

14   7.  Finally, Plex points out that at his deposition, Mr. Castro testified that he has viewed Plex's

15   Sign Up Page from a mobile device:

16

17          Q.     Have you ever viewed the sign-up page from a mobile device – the Plex
                   sign-up page from a mobile device?
18          A.     Yes.
            Q.     What type of mobile device did you view it on?
19          A.     I mean, over the course of my job, I go to that website every once in a while
                   when I'm testing something or logging in or signing up, and in the five and a half
20                 years I've been here, I've had an iPhone, a different iPhone every year. So it's been
                   a few different devices, and I have an Android test device as well.

21          Dkt. 29 (quoting Ex. 1 to Liu Decl. at 47:16-48:2).  Plaintiff did not inquire further

22   regarding Mr. Castro's Android test device and whether Plex's Sign Up Page was completely

23   visible on that device.  *Id.* at 3.  Nor has Plaintiff objected to the authenticity of any of Plex's

24   screenshot evidence.  Plex further notes that Plaintiff's counsel stated in an email dated February

25   22, 2023, that "Plaintiff does not have reason to dispute the contention that the image captured

26   was used throughout the relevant time period."  Dkt. 26 (Ex. 7 to Liu Decl.).

27          While courts have considered the devices on which a Plaintiff registered for a service in

28   determining whether to compel arbitration, most courts have done so where evidence demonstrates

15

that the appearance of the desktop website, mobile website, or smartphone application varied.  For example, in *Snow v. Eventbrite, Inc.*, defendant's motion to compel arbitration was denied where there were three different methods of interacting with Eventbrite's platform (desktop website, mobile website, and smartphone application) and each method had "its own stand-alone sign-up page and purchasing process" with "six distinct TOS agreements a user can assent to at any given time." *Snow*, 2020 WL 6135990, at *1.  The court determined that Eventbrite had failed to produce evidence of the "versions of the sign-in wrap agreements the plaintiffs would have seen during the relevant time period."  *Id.* at *5.  In *Weber v. Amazon.com, Inc.*, the court likewise considered the desktop website flows and mobile website and application flows separately because the appearance of the screens differed significantly.  *See Weber v. Amazon.com, Inc.*, No. 17-cv-8868, 2018 WL 6016975, at *9-11 (C.D. Cal. June 4, 2018) (citing Dkts. 39-16–39-18).

Such is not the case here.  The Court deferred ruling on the motion to compel arbitration to allow both sides to conduct discovery as to how the Sign Up Page appeared to Plaintiff when she created her account in 2021.  *See* Dkt. 22.  For the reasons stated herein, Plaintiff's "evidence" is unavailing.  On the other hand, Plex has presented evidence that the "Create Your Account" image, which is used on the Sign Up Page for both the mobile and desktop websites, was created in 2017 and has been continuously in use.  Castro Decl. III ¶¶ 5, 10.  The image has not materially changed since April 2020 with the exception that the "Continue with Google" button is now white instead of red.  *Id.* at ¶ 9.  Plex also has presented evidence that the "Create Your Account" image on the Sign Up Page is what Plaintiff would have encountered on her Android phone when she created an account in April 2021, which Plaintiff's counsel appears to have conceded.  Castro Decl. I, Ex. 2; Castro Decl. III ¶¶ 9-10; Castro Deposition Transcript 45:24-46:10; Dkt. 26 (Ex. 7 to Liu Decl.).

Accordingly, the Court proceeds with an analysis under *Berman*.  Where, as here, there is no evidence of Plaintiff's actual notice of the agreement to arbitrate, the Court first considers whether "the website provides reasonably conspicuous notice of the terms to which the consumer will be bound."  *Berman*, 30 F.4th at 856; *see also Nguyen*, 763 F.3d at 1177 ("[T]he validity of the [online] agreement turns on whether the website puts a reasonably prudent user on inquiry

notice of the terms of the contract. Whether a user has inquiry notice of the a[n] [online] agreement, in turn, depends on the design and content of the website and the agreement's webpage."). The Court concludes that it does. Plex's Sign Up Page, unlike the webpage at issue in *Berman*, is uncluttered and does not include distracting graphics. *See* Castro Decl. III ¶ 8. The critical notice language is wholly visible and appears in close proximity to the yellow-colored "Create an Account" button in dark gray font of the same size as the rest of the webpage's text other than the statement "Create your free account" that appears at the top of the webpage in a larger font. *See id.* Further, the three buttons for Google, Facebook and Apple plainly provided options for how a user could sign up for Plex's services because each began with "Continue with" and then provided a method for doing so. *See id.* Directly beneath these options is the word "or" and fields for a user to enter an email address and password along with an orange "Create an account" button. *See id.* Under the yellow-colored "Create an account" button, users are clearly informed that "By creating an account or continuing to use a Plex application, website, or software, you acknowledge and agree that you have accepted the Terms of Service and have reviewed the Privacy Policy." *See id.* A user clicking on the hyperlink "Terms of Service" is directed to a copy of the TOS. Castro Decl. I ¶ 9; Castro Decl. III ¶ 6.

Under similar circumstances, the Ninth Circuit and other courts in this district have upheld webpages as providing sufficient notice of the terms of use to form an agreement when the user signed in and used the service. *See, e.g.*, *Lee*, 817 Fed. App'x at 394-95; *Dohrmann v. Intuit, Inc.*, 823 Fed. App'x 482, 484-85 (9th Cir. 2020) (holding consumers received adequate notice of terms and agreed to be bound by arbitration provision contained in terms where warning and hyperlink to terms of use were conspicuous and sign-in page was "relatively uncluttered"); *Regan*, 2021 WL 706465, at *6-7 (granting motion to compel arbitration where application's terms of service were sign-in wrap agreement and concluding plaintiff assented to terms of service by creating an account); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020) (granting motion to compel arbitration of sign-in wrap agreement where sign-up screens were "uncluttered and wholly visible" and the notice text appeared close to the sign-up button); *Britt*, 2021 WL 1338553, at *5 (granting motion to compel arbitration of sign-in wrap agreement). A reasonable person would

1   know that, by signing up, she would be agreeing to Plex's terms even if she used her Google

2   account to sign up.

3        Plaintiff offers two main arguments as to why Plex's Sign Up Page fails to provide

4   reasonably conspicuous notice of the TOS.  First, Plaintiff argues that the notice language

5   "frequently is not within the viewport of mobile devices or is otherwise obscured (i.e. by pop-up

6   keyboards) and thus is not reasonably conspicuous."  Dkt. 27 at 2.  In support of this argument,

7   Plaintiff offers the declaration of her counsel, Kiley Grombacher, who submits screenshots

8   purporting to show Plex's sign up page as it appeared on Ms. Grombacher's iPhone's browser and

9   as it appeared on Ms. Grombacher's secretary's iPhone's browser.  Supp. Grombacher Decl. ¶¶ 6,

10  9, Exs. 2-3.  In these images, Plex's notice language is obscured by a Safari search engine bar.  *See*

11  *id.*  Ms. Grombacher also sets forth the specifications for those iPhone devices, which apparently

12  were copied from Apple's website.  *Id.* ¶¶ 7, 11.  Plaintiff's evidence fails the test for relevance

13  under Federal Rule of Evidence 401, and the Court declines to consider it.  If the user's search

14  engine bar covers Plex's notice, that could present a problem regarding constructive notice.

15  However, as Plex notes, Plaintiff does not assert that the search engine bar of her Android device

16  obscured Plex's notice language.  *See* Dkts. 17 (Miller Decl.), 27-1 (Supp. Miller Decl.).  Further,

17  Plaintiff created her account with Plex in 2021 using an Android.  Miller Decl. ¶ 2; Supp. Miller

18  Decl. ¶ 3.  Present-day screenshots from Ms. Grombacher's and her secretary's iPhones, therefore,

19  are irrelevant to the issue of whether the screen Ms. Miller saw when creating her account in 2021

20  satisfies the *Berman* test.

21        Plaintiff also points to the testimony of Mr. Castro in support of her claim that Plex's

22  notice language is not visible on mobile device users' screens absent scrolling.  Dkt. 27 at 4-5.

23  During Mr. Castro's deposition, Plaintiff asked, "Is it true that, depending on the device utilized

24  by a user there may be a need to scroll to see the entirety of the white box?"  Dkt. 29 at 5 (quoting

25  Grombacher Supp. Decl., Ex. 1 71:20-4).  Mr Castro responded, "That is correct."  *Id.*  It is true

26  that courts have been reluctant to enforce internet agreements where a user was required to scroll

27  to see a notice regarding binding terms of service.  *See, e.g.*, *Metter v. Uber Techs.*, Inc., No. 16-

28  cv-6652, 2017 WL 1374579, at *3 (N.D. Cal. Apr. 17, 2017) (denying motion to compel

1    arbitration where plaintiff averred that keypad obstructed notice and user would have needed to

2    scroll to bottom of screen to see notice).  However, as previously discussed, Plex has presented

3    evidence that the "Create Your Account" image on the Sign Up Page is what Plaintiff would have

4    encountered on her Android phone when she created an account in April 2021 and that Plex's

5    entire Sign Up Page has been completely visible on a Google Android mobile phone since January

6    2021, subject to a user's personal settings related to text size.  Castro Decl. V ¶ 7; Castro Decl. I,

7    Ex. 2; Castro Decl. III ¶¶ 9-10; Castro Deposition Transcript 45:24-46:10.

8            Second, Plaintiff argues that the presence of the hyperlinks in Plex's notice is insufficiently

9    apparent because the hyperlinks are not underlined, capitalized, or in a contrasting font color.  Dkt.

10   15 at 9-10 (citing *Berman*, 30 F.4th at 857).  While this design element presents a close call, the

11   hyperlinks are bolded in black font in a sentence that otherwise appears to use either a lighter gray

12   or black font against a white backdrop, and the first letters of each phrase are capitalized—i.e.,

13   "Terms of Service" and "Privacy Policy."  *See* Castro Decl. III ¶¶ 6, 8; Dkt. 26, Ex. 2 to Liu Decl.

14   ("Castro Decl. IV") ¶ 7.  Because the hyperlinks are bolded and as such appear darker than the rest

15   of the sentence, they are "sufficiently 'set apart' from the surrounding text."  *Berman*, 30 F.4th at

16   857.  It is clear that Plaintiff was not required to "hover [her] mouse over otherwise plain-looking

17   text or aimlessly click on words on a page in an effort to ferret out hyperlinks."  Further, this case

18   is distinguishable from *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019), where

19   the court was tasked with evaluating a similar sign-in screen displaying a hyperlink to the terms of

20   service in a different color and concluded that the display was insufficient to establish inquiry

21   notice.  *Colgate*, 402 F. Supp. 3d at 765-66.  Unlike Plex's sign-in page, the *Colgate* sign-in page

22   included another hyperlink that was bolded, underlined, and in a larger font.  *Id.* at 766.  The court

23   was concerned that users would not know that the second link was also a hyperlink given greater

24   emphasis on the first-appearing link.  *Id.*  By contrast, Plex's Sign Up Page includes three

25   hyperlinks, to its TOS, privacy policy, and sign-in page, where users who already have Plex

26   accounts may log in.  Castro Decl. I, Ex. 2; Castro Decl. III ¶ 8.  The hyperlinks are all bolded and

27   in the same size font, which sufficiently indicates to users that they are clickable in this instance; a

28   user need not "click on every word of the sentence in case one of them is actually a link."

United States District Court
Northern District of California

19

*Colgate*, 402 F. Supp. 3d at 765.  As such, the hyperlink to Plex's TOS was presented in a manner that gave Plaintiff adequate notice that the bolded phrase "Terms of Service" was a clickable link. *See Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 897 (C.D. Cal. Aug. 14, 2020) (granting motion to compel arbitration and finding bolding and underlining of "privacy policy" and "terms of use," coupled with requirement plaintiff affirmatively acknowledge terms of use before completing purchase, sufficient to place reasonably prudent user on inquiry notice); *Houtchens*, 2023 WL 122393, at *4 (finding bold-underlined font sufficient to distinguish hyperlinks from surrounding text).

The second *Berman* factor requires the Court to consider whether Plaintiff took some action, such as clicking a button or checking a box, that unambiguously manifested her assent to Plex's TOS.  The Court finds that she did.  Plaintiff admits that she created a Plex account "on Plex's mobile website in 2021 using an Android phone."  Miller Decl. ¶ 2; Supp. Miller Decl. ¶ 3. Plaintiff has failed to rebut Plex's evidence as to what she saw when creating an account in 2021. She no longer has the Android device she used to create her Plex account, having upgraded her phone since that time.  Dkt. 27-1 (Supp Miller Decl.) ¶ 3.  She offers no positive evidence regarding what she saw when she made her Plex account.  For instance, she does not claim that her Android phone's browser obscured Plex's notice.  Instead, she offers only vague statements such as "I do not recall ever seeing or reviewing the Terms of Service" and "To the best of my knowledge, the notice language that appears in screenshot attached to the Castro Declaration stating that usage of the website would constitute consent to Plex's privacy policy or terms of use was not visible on my device at the time I signed up for service." *Id.* at ¶¶ 5, 9.  She does not dispute Mr. Castro's testimony that, based on Plex's records, she created a Plex account on April 27, 2021.  Castro Decl. I ¶ 13.  Nor does she dispute Plex's evidence that she would have seen the Sign Up Page when creating her account in 2021. Castro Decl. I, Ex. 2; Castro Decl. III ¶¶ 9-10; Castro Deposition Transcript 45:24-46:10; Dkt. 26 (Ex. 7 to Liu Decl.).  Thus, her statements that she never saw Plex's TOS "can be understood to mean that she was subjectively unaware of their existence" on the screen she viewed to use the mobile website. *Britt*, 2021 WL 1338553, at *4; *Maynez*, 479 F. Supp. 3d at 898 ("Whether or not Plaintiff actually saw, reviewed, or read the

Terms of Use is not relevant to the question of whether she agreed to them.").  Mutual assent, however, is measured objectively, and it is undisputed here that Plaintiff created a Plex account using the Sign Up Page.  Accordingly, there is no genuine dispute that Plaintiff objectively manifested her assent to Plex's terms of service.

Plaintiff offers one final argument in an effort to avoid this result—that the Google Sign In Page likewise failed to put her on notice that by creating an account, she was agreeing to Plex's Terms of Service.  Dkt. 15 at 4, 10.  She points out that the Google Sign In Page does not warn users that "[b]y creating an account or continuing to use a Plex application, website, or software, you acknowledge and agree that you have accepted the Terms of Service and have reviewed the Privacy Policy."   Rather, it is undisputed that the Google Sign In Page simply states, "To continue, Google will share your name, email address, language preference, and profile picture with Plex. Before using this app, you can review Plex's privacy policy and terms of service."  Dkt. 15 at 4; *see also* Dkt. 18-1 (Castro Decl. II) ¶ 8.  Plaintiff's argument is unavailing.  Plex has demonstrated that Plaintiff would have encountered Plex's Sign Up Page first, which, as set forth above, satisfies the *Berman* test, and then would have encountered the Google Sign In Page.  *See* Castro Decl. II ¶¶ 4, 8, 10.  Courts have upheld similar phased sign-in processes where a user first encountered a webpage that placed the user on inquiry notice.  *See, e.g.*, *Selden v. Airbnb*, 4 F.4th 148, 156-58 (D.C. Cir. 2021) (affirming motion to compel arbitration and concluding that phased sign-in created valid sign-in wrap agreement where Airbnb's sign-in page clearly put users on inquiry notice); *Britt*, 2021 WL 1338553, at *4 (granting motion to compel arbitration where plaintiff elected to sign in to Wish using her Facebook account).  Further, Mr. Castro testified in his deposition that Google, not Plex, maintains the Google Sign In Page.  Dkt. 29 (Ex. 1 to Liu Decl.) at 48:11-25.  To the extent Plaintiff challenges the lack of notice on Google's webpage, therefore, Plaintiff's quarrel lies with Google.

In sum, the Court finds that Plex's Sign Up Page satisfies the *Berman* test, that Plaintiff was on inquiry notice of the arbitration agreement, and that Plaintiff manifested unambiguous assent to Plex's TOS when she signed up for Plex's services using her Google credentials.

**2.**                    **Validity and Enforceability of the Arbitration Agreement**

Plaintiff does not dispute that the arbitration provision covers her claims but instead argues that the arbitration agreement and class action waiver contained in Plex's TOS are (1) procedurally and substantively unconscionable and (2) invalid because they prohibit public injunctive relief and are invalid under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).  Dkt. 15 at 11-22.  "Unlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (citation omitted). "[L]anguage 'delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause[ ] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement.'" *Id.*

As Plex points out, Plex's TOS include a delegation clause by virtue of its incorporation by reference of the JAMS Streamlined Arbitration Rules.  *See* Castro Decl. I ¶ 12, Ex. 1 ¶ 23.  The arbitration agreement provides, in relevant part, "[a]rbitration shall be conducted under the rules then prevailing of JAMS/ENDISPUTE Streamlined Arbitration Rules and Procedures in effect at the time of filing of the demand for arbitration."  Castro Decl. I ¶ 12, Ex. 1 ¶ 23.  Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of Section 8(b) of the JAMS Streamlined Rules, which provides, "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."  JAMS Streamlined Arbitration Rules & Procedures, https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-8 (last accessed Mar. 27, 2023).

The Court finds that the arbitration agreement clearly and unmistakably delegates questions of arbitrability to the arbitrator through its incorporation of the JAMS Streamlined Arbitration Rules & Procedures.  *See Brennan*, 796 F.3d at 1130-32 (holding that incorporation of AAA rules constituted clear and unmistakable evidence that the parties agreed to arbitrate arbitrability); *White v. Ring LLC*, No. 22-cv-6909, 2023 WL 1097554, at *6 (C.D. Cal. Jan. 25,

2023) (concluding that incorporation of JAMS Streamlined Arbitration Rules & Procedures constituted clear and unmistakable evidence parties agreed to arbitrate arbitrability, including enforceability of arbitration agreement).  Moreover, because Plaintiff's unconscionability and validity arguments are not specifically directed at the delegation clause, those challenges must be resolved by the arbitrator.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 64, 72-73 (2010) (holding that because plaintiff did not challenge the specific delegation clause, but rather only challenged the arbitration provision as a whole as unconscionable, that challenge is for the arbitrator); *I.C. v. Zynga, Inc.*, No. 20-cv-1539, 2021 WL 3271187, at *2 (N.D. Cal. July 30, 2021) (granting motion to compel arbitration in clickwrap case and concluding that unconscionability and *McGill* were issues for arbitrator based on agreement's clear delegation of question of arbitrability to arbitrator and plaintiffs' failure to challenge delegation clause as unconscionable); *Cordas v. Uber Technologies, Inc.*, 228 F. Supp. 3d 985, 991-92 (N.D. Cal. Jan. 5, 2017) (holding arbitration clause provided clear and unmistakable evidence of parties' intent to delegate questions of arbitrability to arbitrator where arbitration agreement incorporated AAA Commercial Arbitration Rules); *see also B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 957-59 (2022) (concluding *McGill* challenge fell within scope of gateway issues parties agreed to delegate to the arbitrator and that *McGill* challenge was not specific to the delegation clause).  Accordingly, Plex's motion to compel arbitration is **GRANTED**.

## IV.    CONCLUSION

For the reasons set forth above, Plex's motion to compel arbitration is **GRANTED**, and the case is hereby stayed pending completion of the arbitration.  The Clerk is directed to close the file for administrative purposes.  It may be reopened for such additional proceedings as may be appropriate and necessary upon conclusion of the arbitration.

SO ORDERED.

Dated: March 30, 2023

SUSAN VAN KEULEN
United States Magistrate Judge