UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECKA MILLER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PLEX, INC., et al.,<br><br>　　　　Defendants. | Case No.  22-cv-05015-SVK<br><br>**ORDER DENYING MOTION TO LIFT STAY**<br><br>Re: Dkt. No. 33 |

　　　　The Court previously stayed this action after compelling the Parties to arbitrate their dispute. *See* Dkt. 32.  Afterwards, the Parties engaged in arbitration proceedings with JAMS over several months.  However, in the fall of 2023, despite multiple follow-up requests from JAMS, Defendant Plex, Inc. ("Plex") neglected to pay an invoiced fee for nearly 50 days.  Plaintiff Rebecka Miller threatened legal action against JAMS for its failure to terminate the arbitration in light of Plex's dilatory payment.  Eventually, JAMS terminated the arbitration, purportedly due to Plaintiff's "withdrawal."

　　　　Plaintiff now moves to lift the stay in this action so that she may proceed with resolving her dispute in court.  *See* Dkt. 33 (the "Motion").  Defendants filed an opposition.  *See* Dkt. 34 (the "Opposition").  Plaintiff filed a reply.  *See* Dkt. 35 (the "Reply").  All Parties have consented to the jurisdiction of a magistrate judge.  *See* Dkts. 9, 13.  The Court has determined that the Motion is suitable for resolution without oral argument.  *See* Civil Local Rule 7-1(b).  After considering the Parties' briefing, relevant law and the record in this action, and for the reasons that follow, the court **DENIES** the Motion and **ORDERS** the Parties to proceed with arbitration.

///

///

///

I.  BACKGROUND

Plaintiff commenced this putative class action on September 1, 2022. *See* Dkt. 1. Defendants subsequently moved to compel arbitration. *See* Dkt. 12. The Court granted Defendants' request and stayed the case, pending resolution of arbitration proceedings. *See* Dkt. 32. In its order compelling arbitration, the Court found "that the arbitration agreement clearly and unmistakably delegates questions of arbitrability to the arbitrator through its incorporation of the JAMS Streamlined Arbitration Rules & Procedures" (the "JAMS Rules").[1] *See id.* at 22. Pursuant to that order, Plaintiff initiated an arbitration against Plex[2] through JAMS, seeking an initial determination "on jurisdiction and arbitrability from an Arbitrator"; she explained that she would submit a detailed demand regarding the substance of her claims only after an arbitrator answered that preliminary inquiry. *See* Motion at 3; Dkt. 34-1, Ex. 1 at ECF Page 8.

Over the next few months, the Parties proceeded with the initial steps of the arbitration process, including (1) the payment of filing fees by both Parties, (2) Plex's submission of an answer and counterclaim and (3) the joint selection of an arbitrator by both Parties. *See* Dkt. 34-1 ¶¶ 3-6. Then, on September 1, 2023, JAMS invoiced Plex for a service fee that was "due upon receipt." *See id.* ¶ 7; *id.*, Ex. 6.[3] Plex failed to pay the fee, prompting JAMS to email the Parties on September 21, 2023 to request that Plex "remit payment in order to move forward with the arbitration." *See* Dkt. 33-8 at ECF Page 13. Counsel for Plex initiated the payment process a few days later, "which included seeking approval" from Plex. *See* Dkt. 34-1 ¶ 8. JAMS then sent a follow-up email requesting payment on October 5, 2023, as it had still not received payment. *See* Dkt. 33-8 at ECF Pages 12-13. Counsel for Plex responded, confirming that it was awaiting approval from Plex. *See id.* at ECF Page 12. Two weeks later, JAMS had still not received payment, and so it sent another follow-up email. *See id.* at ECF Pages 11-12. Counsel for Plex responded again, this time explaining that Plex had already approved the payment and that the

---

[1] The JAMS Rules are available at https://www.jamsadr.com/rules-streamlined-arbitration/.

[2] Plaintiff named only Plex and not Defendant Plex, GmbH as a respondent in her arbitration demand. *See* Opposition at 2-3.

[3] The invoice was dated August 31, 2023. *See* Dkt. 34-1, Ex. 6.

payment was being processed. *See id.* at ECF Page 11. Regardless, following some back-and-forth emailing among the Parties, JAMS administratively stayed the arbitration on October 19, 2023. *See id* at ECF Pages 9-11. In its notice of administrative stay, JAMS stated that it would lift the stay upon receipt of payment in full and would close the matter if it did not receive payment in full by November 18, 2023. *See* Dkt. 33-9.

Later that same day (October 19, 2023), Plex "confirmed the payment was made." *See* Dkt. 33-8 at ECF Page 7.[4] A few days after that, it requested that JAMS lift the administrative stay. *See id.* at ECF Page 6. Plaintiff responded by threatening to seek judicial relief against JAMS due to its failure to close the matter. *See id.* JAMS then quickly closed the matter "in light of [Plaintiff's] notice of withdrawal." *See id.* Plex insisted that JAMS reopen the matter because it had paid the fee by the November 18, 2023 deadline. *See id.* at ECF Pages 4-5. JAMS refused, explaining that it had closed the matter "in light of [Plaintiff's] notice of withdrawal," that the November 18, 2023 deadline set by its notice of administrative stay "provided an administrative deadline as to when JAMS would administratively close its file [and that t]his date was not intended to and did not extend the due date for payment of the outstanding invoice." *See id.* at ECF Page 2. JAMS also explained that the matter would "remain closed unless the parties agree or a Court orders the parties to proceed in arbitration." *See id.* In light of this confirmation that arbitration proceedings were closed, Plaintiff filed the Motion.

## II.     LEGAL STANDARD

The Federal Arbitration Act (the "FAA") mandates that courts stay actions referred to arbitration, but that mandate expires once "such arbitration has been had in accordance with the terms of the [applicable] agreement." *See* 9 U.S.C. § 3. At that point, a court regains its "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citation omitted). "The corollary to this power is the ability to lift a stay previously imposed." *Food & Water Watch, Inc. v. U.S. EPA*, No. 17-cv-02162-EMC,

---

[4] JAMS' billing statement ascribes an October 23, 2023 date to this payment, but that presumably refers to the date JAMS received the payment and not the date Plex issued the payment. *See* Dkt. 34-1, Ex. 2.

3

2022 WL 16528140, at *2 (N.D. Cal. Oct. 28, 2022) (citation omitted). "Courts within the Ninth Circuit have recognized that '[a] court may abandon its imposed stay of litigation if the circumstances that persuaded the court to impose the stay in the first place have changed significantly.'" *Tribe v. U.S. Bureau of Reclamation*, No. 19-cv-04405-WHO, 2021 WL 4482117, at *3 (N.D. Cal. Sept. 30, 2021) (citation omitted).

## III.   DISCUSSION

The Court may lift the stay in this action only if it first determines that "arbitration has been had in accordance with the terms of the [Parties'] agreement." *See* 9 U.S.C. § 3. That agreement required the Parties to arbitrate their dispute before JAMS under the JAMS Rules. *See* Dkt. 32 at 4. Accordingly, the Court must assess whether JAMS terminated the arbitration as permitted by the JAMS Rules. Plaintiff insists JAMS did, but the Court concludes it did not. The FAA, therefore, mandates that the stay remain. Plaintiff raises three arguments why the Court should nevertheless lift the stay, but the Court rejects them all.

### A.   JAMS Did Not Terminate Arbitration In Accordance With Its Rules

JAMS Rule 6(c) provides that, "if, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings." Here, Plex paid its outstanding fee approximately 50 days after it was due and following three follow-up requests from JAMS. Thus, the JAMS Rules would have permitted JAMS to terminate the arbitration in light of Plex's untimely payment. The only question that remains is: Why did JAMS terminate the arbitration? If it did so because Plex failed to timely pay its outstanding fee, then the JAMS Rules permitted the termination. But if it did so for a different reason, then it does not appear that the JAMS Rules permitted the termination.

As it turns out, JAMS did terminate the arbitration for such a different reason, namely, Plaintiff's apparent withdrawal from the arbitration. In its initial email terminating the arbitration, JAMS explained that, "in light of [Plaintiff's] notice of withdrawal, JAMS will close its file at this time." Dkt. 33-8 at ECF Page 6. It reaffirmed its basis for termination in a second email sent about a week later: "JAMS has closed its file for this matter in light of [Plaintiff's] notice of withdrawal." *Id.* at ECF Page 2. Thus, JAMS did not terminate the arbitration under JAMS Rule

4

1  6(c) for Plex's failure to timely pay its invoiced fee.

2  Indeed, Plex actually paid the fee on time. JAMS clearly stated in its October 19, 2023 notice of administrative stay that (1) it had stayed the case in light of Plex's delay in paying the invoiced fee, (2) "[u]pon receipt of full payment, the stay w[ould] be lifted" and (3) "[i]f JAMS d[id] not receive the outstanding amount by **November 18, 2023**, JAMS w[ould] close its file." *See* Dkt. 33-9 (underline emphasis added). While JAMS eventually insisted that this language "was not intended to and did not extend the due date for payment of the outstanding invoice" (Dkt. 33-8 at ECF Page 2), the more reasonable—indeed the only reasonable—interpretation is that JAMS did extend the due date for Plex to pay the outstanding fee. In rejecting JAMS' *ex post* interpretation of its notice of administrative stay, the Court is mindful that courts "are generally loathe" to "force an independent arbitration organization . . . to ignore its own rules and re-open a case that it has previously closed." *Steffanie A. v. Gold Club Tampa, Inc.*, No. 19-cv-03097-VMC, 2020 WL 4201948, at *4 (M.D. Fla. July 22, 2020) (citations omitted). But nothing in the JAMS Rules permits JAMS to dictate with unimpeachable authority what its communications do and do not mean, and the Court will not ignore the clear language of those communications just because JAMS has chosen to do so. The Court defers to JAMS in interpreting the organization's rules, yes, but in doing so, the Court does not cede its ability to reason for itself. Reason impels the Court to conclude that JAMS extended Plex's payment deadline, and Plex ultimately paid the outstanding fee weeks before that extended deadline. Thus, when faced with the question of whether JAMS Rule 6(c) permitted JAMS to terminate the arbitration for Plex's untimely payment of fees, the Court answers "no."

22  Plaintiff's cited authorities do not compel a different result. *See* Motion at 6-9; Reply at 5-8. In every one of Plaintiff's cited cases, either (1) a party failed to timely pay a required fee or (2) the arbitration organization acted in accordance with its own rules. *See Tillman v. Tillman*, 825 F.3d 1069, 1072-74 (9th Cir. 2016) (AAA terminated arbitration in light of party's failure to pay fee due to financial hardship); *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011 (9th Cir. 2004) (AAA suspended arbitration in light of party's inability to pay fee); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1199 (9th Cir. 2003) (arbitration organization canceled

arbitration in light of party's failure to pay fee); *Lee v. Citigroup Corp. Holdings, Inc.*, No. 22-cv-02718-SK, 2023 WL 6053849, at *1-2 (N.D. Cal. Sept. 14, 2023) (AAA terminated arbitration after party paid fee after deadline); *Greco v. Uber Techs., Inc.*, No. 20-cv-02698-YGR, 2021 WL 134578, at *1, *3 (N.D. Cal. Jan. 14, 2021) (AAA declined to administer arbitration based on "reasonable" interpretation of its rules); *Eliasieh v. Legally Mine, LLC*, No. 18-cv-03622-JSC, 2020 WL 1929244, at *2 (N.D. Cal. Apr. 21, 2020) (AAA terminated arbitration in light of party's failure to pay fee); *Waters v. Vroom Inc.*, No. 22-cv-01191-TWR, 2023 WL 187577, at *1-2 (S.D. Cal. Jan. 13, 2023) (AAA terminated arbitration in light of party's failure to pay fee); *Noble Cap. Fund Mgmt., LLC v. US Cap. Glob. Inv. Mgmt., LLC*, 31 F.4th 333, 335-36 (5th Cir. 2022) (JAMS terminated arbitration in light of party's failure to pay fee); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1288-89 (10th Cir. 2015) (AAA terminated arbitration in light of party's failure to pay fee); *Steffanie A.*, 2020 WL 4201948, at *1-2 (AAA terminated arbitration in light of party's failure to pay fee). Here, however, Plex timely paid its outstanding fee before the November 18, 2023 deadline set by JAMS, and JAMS did not terminate arbitration in accordance with its rules.

Did the JAMS Rules nevertheless permit JAMS to terminate the arbitration because of Plaintiff's supposed withdrawal? The answer to that question is also "no."

***First***, Plaintiff did not withdraw. To the contrary, Plaintiff repeatedly pleaded (if not demanded) that JAMS terminate the arbitration. Had Plaintiff withdrawn, there would have been no need for her to so vigorously insist that JAMS close its file. Clearly, she understood that her claim remained in arbitration until JAMS said otherwise. Indeed, she could not withdraw, as the Court ordered her to arbitrate her claim. If Plaintiff could withdraw from a court-ordered arbitration at her leisure, resulting in termination of the arbitration sufficient to land Plaintiff back in court, she would sap the FAA and the Court of their power to compel arbitration. The Court will not sanction such an outcome.

***Second***, the JAMS Rules did not permit Plaintiff to withdraw. Under JAMS Rule 10(a), a party may not unilaterally withdraw from arbitration "after the issuance of [a] Commencement Letter." The record indicates that JAMS did issue such a Commencement Letter to the Parties prior to Plaintiff's ostensible withdrawal. *See* Dkt. 33-8 at ECF Page 2 ("The Commencement

6

Letter was issued on June 15, 2023."). Thus, even if Plaintiff did unilaterally withdraw, the JAMS Rules did not permit her to do so, and, accordingly, would not permit termination on the basis of such withdrawal.

Ultimately, "there is 'no totally satisfactory solution' to a party's nonpayment of its share of arbitration fees. But parties have the right under the FAA to choose the rules under which their arbitration will be conducted," and the Court will hold the Parties to their agreement. *Tillman*, 825 F.3d at 1076 (citations omitted); *see also Greco*, 2021 WL 134578, at *2 ("Ultimately, the Federal Arbitration Act does not confer a right to compel arbitration of any dispute at any time, but only the right to obtain an order directing that arbitration proceed *in the manner provided for in [the parties'] agreement*." (quotation marks and citation omitted)); *see, e.g.*, *Waters*, 2023 WL 187577, at *3 ("Because Defendants expressly agreed to be bound by the AAA Consumer Arbitration Rules, they cannot now complain of their enforcement." (citation omitted)). Here, the Parties agreed to resolve their dispute in an arbitration governed by the JAMS Rules. Yet JAMS did not comply with the JAMS Rules when it terminated the arbitration. Thus, arbitration has not "been had in accordance with the terms of the [Parties'] agreement" as required by the FAA. *See* 9 U.S.C. § 3. The FAA's mandatory stay, therefore, remains in effect, and the Court lacks the power to lift that stay.

**B.     California Law Cannot Override The FAA's Mandatory Stay**

Regardless of whether the JAMS Rules permitted JAMS to terminate the arbitration, Plaintiff argues that, under the California Code of Civil Procedure, Plex breached the Parties' agreement and waived its right to arbitrate, thereby permitting Plaintiff to resume litigation in court. *See* Motion at 9-11; Cal. Civ. Proc. Code § 1281.98 ("SB 707").[5] Specifically, SB 707 provides that, if a party that drafted an agreement to arbitrate fails to pay a required fee "within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in

---

[5] Sections 1281.97 and 1281.98 of the statute contain parallel provisions. They primarily differ in that the former applies prior to commencement of arbitration and the latter applies during pendency of arbitration. *See De Leon v. Juanita's Foods*, 85 Cal. App. 5th 740, 750 (2d Dist. Div. 3 2022). The instant dispute concerns Plex's actions during the pendency of arbitration. The Court will therefore focus its analysis on Section 1281.98.

7

default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach." SB 707 § 1281.98(a)(1). Where a drafting party engages in such a material breach and default, "the employee or consumer may unilaterally elect to . . . [w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction." *See id.* § 1281.98(b)(1). Thus, Plaintiff insists, because Plex paid the required fee more than 30 days after the initially set due date, SB 707 entitles her to return her claims to court.

Yet doing so would run headlong into the stay mandated by the FAA. On the one hand, as explained above, arbitration has not been "had in accordance with the terms of the [Parties'] agreement," and so the FAA <u>obligates</u> the Court to stay this action. *See* 9 U.S.C. § 3. On the other hand, according to Plaintiff, SB 707 dictates that Plex materially breached and defaulted under the Parties' agreement to arbitrate and accordingly permits Plaintiff to adjudicate her claims in court. This conflict between federal law and state law must necessarily resolve in favor of the FAA as a federal statute afforded supremacy over conflicting state laws. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989). In other words, the FAA preempts SB 707, at least as that state statute would be applied in this action.

"[S]tate law may . . . be pre-empted to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (citation omitted). "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced <u>according to their terms</u>.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (emphasis added) (citations omitted). Here, the Parties' agreement requires them to arbitrate their dispute under the JAMS Rules. But JAMS did not adhere to the JAMS Rules when it terminated the arbitration. Sanctioning that termination and thrusting the Parties back into court would therefore deny the Parties enforcement of their agreement according to its terms and flout the "principal purpose" of the FAA.[6] More fundamentally, it is simply impossible for the Court to apply both the FAA and

---

[6] It does not matter that the Parties agreed that California law would govern the construction and enforcement of their agreement. *See* Dkt. 12 at 7-8. That is because they agreed that the JAMS Rules (*i.e.*, not California law) would govern their arbitration. *See* Dkt. 32 at 4. Indeed, they expressly identified one provision of the California Code of Civil Procedure that would apply to

8

SB 707, because one mandates a stay of court proceedings, and the other permits those proceedings to continue. *See Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 480 (2013) ("[T]he Court has found state law to be impliedly pre-empted where it is 'impossible for a private party to comply with both state and federal requirements.'" (citations omitted)).

Plaintiff rejects FAA preemption of SB 707 (*see* Motion at 11-12; Reply at 4-5), citing numerous federal- and state-court decisions that reach that conclusion. *See Costa v. Melikov*, No. 20-cv-09467-AB, 2022 WL 18228248 (C.D. Cal. Oct. 21, 2022); *Nyerges v. Pac. Sunwear of Cal., LLC*, No. 21-cv-01123-CJC, 2022 WL 20717551 (C.D. Cal. July 6, 2022); *Agerkop v. Sisyphian LLC*, No. 19-cv-10414-CBM, 2021 WL 1940456 (C.D. Cal. Apr. 13, 2021); *Postmates Inc. v. 10,356 Individuals*, No. 20-cv-02783-PSG, 2021 WL 540155 (C.D. Cal. Jan. 19, 2021); *Gallo v. Wood Ranch USA, Inc.*, 81 Cal. App. 5th 621 (2d Dist. Div. 2 2022); *Espinoza v. Superior Ct.*, 83 Cal. App. 5th 761 (2d Dist. Div. 1 2022). However, every court in this district that has considered the issue has held that the FAA does preempt SB 707. *See Belyea v. GreenSky, Inc.*, 637 F. Supp. 3d 745 (N.D. Cal. 2022); *Lee v. Citigroup Corp. Holdings, Inc.*, No. 22-cv-02718-SK, 2023 WL 6132959 (N.D. Cal. Aug. 29, 2023). Notably, every decision cited by Plaintiff on this point predates the issuance of *Belyea* and *Lee*. Indeed, none of Plaintiff's cited authorities address the Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022), a decision on which the *Belyea* and *Lee* courts based their conclusions. *See also Lee*, 2023 WL 6132959, at *2 ("The Court finds that the reasoning of Belyea is correct, especially given the analysis under the more recent guidance from the Supreme Court in *Viking River Cruises*."). Further, the Court is aware of only one decision issued after *Lee* that holds that the FAA does not preempt SB 707, yet that decision fails to address either *Belyea* or *Lee*. *See Suarez v. Superior Ct. of San Diego Cnty.*, No. D082429, 2024 WL 256450 (Cal. Ct. App. 4th Dist. Div. 1 Jan. 24, 2024).

However, the Court need not decide whether it agrees with Plaintiff's cited authorities and

---

their arbitration, which implies that no other provision (such as SB 707) would apply. *See id.*; *White v. W. Title Ins. Co.*, 40 Cal. 3d 870, 881 n.4 (1985) (canon of construction that enumeration of certain terms implies exclusion of unenumerated terms applies to interpretation of contracts).

9

*Suarez*, on the one hand, or *Belyea* and *Lee*, on the other. That is because this action involves a narrow conflict between the FAA and SB 707, and none of the decisions rejecting FAA preemption of SB 707 address a sufficiently similar situation:

- In *Postmates*, the plaintiff sought a declaration that the FAA generally preempted SB 707 <u>to avoid</u> being haled into arbitration as required by the applicable agreement. *See Postmates*, 2021 WL 540155, at *3-4. The court concluded that the FAA did not preempt SB 707 because, "rather than render arbitration agreements invalid or unenforceable, SB 707 *encourages* arbitration." *See id.* at *7. Here, however, application of SB 707 would deprive the Parties of their agreed-to arbitration.

- In *Costa*, *Nyerges*, *Agerkop*, *Gallo*, *Espinoza* and *Suarez*, the defendants did not pay arbitration fees within 30 days after their due dates, and so the plaintiffs sought to return the disputes to court. *See Costa*, 2022 WL 18228248, at *2-4; *Nyerges*, 2022 WL 20717551, at *1; *Agerkop*, 2021 WL 1940456, at *2-3; *Gallo*, 81 Cal. App. 5th at 630-32; *Espinoza*, 83 Cal. App. 5th at 771-72; *Suarez*, 2024 WL 256450, at *1. Here, however, Plex paid the required fee before the revised due date set by JAMS.

In light of these factual distinctions and the narrow (and seemingly first-of-its-kind) conflict between the FAA and SB 707 presented here, the Court declines to (1) opine whether the courts issuing these other FAA-preemption decisions erred or (2) decide whether the FAA *per se* preempts SB 707. Rather, the Court holds only that the FAA preempts SB 707 to the extent that the two conflict as they do here: Two parties entered into an agreement to arbitrate. That agreement required them to arbitrate certain disputes under a specific set of rules. One of the parties then initiated an action in court to resolve such a dispute. The court stayed the action under the FAA and directed the parties to arbitrate their dispute in accordance with the terms of their agreement. Arbitration began, but the arbitration organization ultimately terminated the arbitration for a reason <u>not authorized</u> by the rules that the parties agreed would govern their arbitration. In other words, the parties had not "had" an arbitration "in accordance with the terms of [their] agreement." 9 U.S.C. § 3. Under these circumstances, the FAA demands that the stay remain in place, while SB 707 permits the plaintiff to unilaterally return the dispute to court.

When such a narrow conflict arises, SB 707 must yield.

### C. Plex Did Not Default In Arbitration

Even if the FAA does preempt SB 707, Plaintiff argues that the Court must nevertheless lift the mandated stay because Plex defaulted in arbitration by failing to timely pay the required fee. *See* Motion at 13-14. Broadly speaking, a default refers to a failure to perform a legal or contractual duty and typically occurs when a party fails to pay an outstanding debt when due. *See Sink*, 352 F.3d at 1199 n.2. Under this definition, the Court cannot conclude that Plex defaulted; Plex paid its outstanding fee before the deadline set by JAMS.

In rejecting this conclusion, Plaintiff relies primarily on the Ninth Circuit's decision in *Sink*. In *Sink*, the district court stayed the action and compelled the parties to arbitrate their dispute. *See id.* at 1198. The parties' agreement to arbitrate obligated the defendant to pay the costs of arbitration. *See id.* at 1198 & n.1. The defendant neglected to pay the arbitration fee, and the arbitrator consequently canceled the arbitration and formally entered default against the defendant. *See id.* at 1199. The district court subsequently agreed that the defendant had defaulted and lifted its earlier stay. *See id.* On appeal, the Ninth Circuit affirmed, holding that the district court did not clearly err in finding that the defendant had defaulted, given that the defendant (1) owed a fee, (2) did not pay the fee before its due date and (3) made no "genuine efforts to make alternate payment arrangements." *See id* at 1199-1200. In light of the defendant's default, the FAA no longer mandated a stay of court proceedings. *See id.* at 1200; *see also* 9 U.S.C. § 3 (court must stay proceedings, "providing the applicant for the stay is not in default in proceeding with . . . arbitration").

*Sink* does not support a determination that Plex defaulted under the Parties' agreement. As explained above, Plex paid the required fee before the revised deadline set by JAMS. To be sure, Plex delayed in paying the fee. But it "made genuine efforts to" pay and did ultimately pay. *Sink*, 352 F.3d at 1199. JAMS did not terminate the arbitration because of Plex's allegedly untimely payment, and JAMS did not conclude that Plex defaulted. Thus, the facts of this action are entirely distinguishable from the facts of *Sink*.

The *Belyea* court addressed a similar situation: Did a defendant's late payment of an

arbitration fee constitute a breach of the parties' agreement to arbitrate? *See Belyea*, 637 F. Supp. 3d at 759-60. The court explained that, "[a]bsent a 'time is of the essence' clause, slow payment—as opposed to no payment at all—is not usually sufficient to constitute breach under general principles of California contract law." *Id.* at 760 (citation omitted). Because the defendant "paid the fees before the arbitration provider terminated the proceedings," no breach had occurred. *See id.* Likewise, here, Plex offered a delayed payment (as opposed to no payment at all), and Plaintiff does not dispute that the Parties' agreement does not contain a "time is of the essence" clause. *See* Opposition at 7. And while the arbitration organization in *Belyea* did not terminate arbitration proceedings, the fact that JAMS terminated the arbitration here is irrelevant—it did not do so because of Plex's delayed payment.

### D. Plex Did Not Waive Its Right To Arbitrate Plaintiff's Dispute

Plaintiff also argues that Plex waived its right to proceed with arbitration when it delayed in paying the required fee. *See* Motion at 14-15. "[T]he test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023). Indisputably, Plex knew of its existing right to arbitrate—it moved to compel arbitration. *See* Dkt. 12. The question of waiver, therefore, hinges on whether Plex intentionally acted in a way inconsistent with its right to pursue arbitration.

"There is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, [courts] consider the totality of the parties' actions." *Hill*, 59 F.4th at 471 (citation omitted). Plaintiff points to two of Plex's acts as supporting a finding of waiver, but neither of those acts indicates that Plex acted inconsistently with its right to pursue arbitration.

***First***, Plaintiff asserts that Plex "failed to pay the[] arbitration fees by the due date set by JAMS." *See* Motion at 15. That is false. Plex paid the arbitration fee weeks before the November 18, 2023 due date set by JAMS.

***Second***, Plaintiff asserts that Plex engaged in "cavalier and inexcusable tardiness in paying the[] arbitration fees." *See id.* The Court agrees with Plaintiff's characterization of Plex's

payment as "tard[y]," but disagrees that this tardy payment alone indicates that plex acted inconsistently with its right to pursue arbitration. In the months following Plaintiff's initiation of arbitration, Plex paid its portion of the initial filing fee, submitted an answer and counterclaim in response to Plaintiff's arbitration demand and jointly selected an arbitrator with Plaintiff. *See* Dkt. 34-1 ¶¶ 3-6. Further, counsel for Plex responded to JAMS' follow-up emails, explaining initially that he was waiting for client approval for the payment and later that the payment was being processed. *See* Dkt. 33-8 at ECF Pages 11-12. Thus, the "totality" of Plex's actions clearly demonstrates its intent to proceed with arbitration. *See Hill*, 59 F.4th at 471; *see, e.g.*, *Belyea*, 637 F. Supp. 3d at 760-61 (no waiver where defendant "participated in arbitration, filed a timely answer before JAMS, and paid its share of fees roughly 40 days post invoice").

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion and **ORDERS** the Parties to proceed with arbitration. The stay in this action remains in effect.

**SO ORDERED.**

Dated: January 30, 2024

SUSAN VAN KEULEN
United States Magistrate Judge